Metropolitan Bank vs. N. O. Brewing Association.

## No. 13,229.

## METROPOLITAN BANK VS. NEW ORLEANS BREWING ASSOCIATION.

### SYLLABUS.

1. RECEIVER.—The appointment of a receiver was proper; it had the approval of the legal representatives of the defendant company. He cannot be removed in an attack collaterally made.

2. NOTICE.—The receiver had, when his application to sell was granted, given ten days' notice, as required, of his application to sell the property.

3. PARTY IN INTEREST.—The receiver was a party in interest, whose application to sell could be considered and granted if, in the judgment of the court, it was to the interest of the creditors; besides, a creditor joined in the application.

4. ORDER OF SALE.—The court had the power to order a sale of the mortgaged premises, subject to the laws regarding the appraisement of property sold at judicial sale. Although the amount of the bid may be less than the amount of the mortgage, the adjudication will be valid.

5. LOTS.—The forming of lots and the appraisement of lots, in order to fix the interest of creditors, is not a method unknown to Louisiana laws.

6. ALL PARTIES BEFORE THE COURT.—Many of the debts were due and owing; all parties were before the court to be heard regarding the terms and conditions of the sale. The application to sell is treated as having been made contradictorily with all parties concerned and as if the proceedings were in the name of the mortgage creditors seeking to foreclose their mortgage.

7. OTHER MEASURES NOT PRACTICABLE.—If different steps were to be taken, the property would be sold only after great delays and after incurring ruinous costs. It being in the hands of a receiver, he cannot in these proceedings be divested of his possession, and the property cannot be sold without regard to his possession.

8. COSTS.—The receiver's charges and other charges should be equal to the services rendered.

9. SALES FOR CASH TO MEET DEBTS DUE.—All creditors must be placed on a footing corresponding with their respective rights.

ON APPEAL from the Civil District Court for the Parish of Orleans. *St. Paul, J.*

*Dinkelspiel & Hart,* and *Buck, Walshe & Buck,* for A. G. Ricks, Receiver, of the New Orleans Brewing Association, Appellee.

*Denegre, Blair & Denegre,* for G. A. Blaffer, Charles Hernsheim and J. E. Merrilh, third persons, interested in the judgment, Appellants.

*Hugh C. Cage,* Attorney for absent creditors, Appellee.

Submitted on briefs June 15, 1899.
Opinion handed down June 21, 1899.

The opinion of the court was delivered by

BREAUX, J.   This is an appeal by G. A. Blaffer, Charles Hernsheim and F. E. Merrilh, creditors of the New Orleans Brewing Association, from a judgment decreeing the sale of the property of the defendant corporation for the purpose of settlement and final liquidation of its affairs.

Five brewing companies; the Lafayette, the Louisiana, the Pelican, the Southern and the Weckerling Brewing Companies, formed an association and adopted a charter.   After the organization, this association bought the Crescent City Brewing Company.   In effecting this purchase the association assumed a large indebtedness of the Crescent City Brewing Company.   An act of mortgage, of record, shows that soon after its organization the New Orleans Brewing Association mortgaged all its property to secure a bond issue of one million, six hundred thousand dollars.

In addition, the other companies owed large amounts, the whole footing four hundred and sixty thousand and five hundred dollars; and for that indebtedness bonds of the defendant company, of equal amount to the foregoing sum, was deposited with the Metropolitan Bank as trustee, to be exchanged at *par,* and they were all exchanged, except thirty thousand dollars, issued by the Weckerling, and an amount issued by the Crescent City Brewing Company.

It appears that, at first, the New Orleans Brewing Association was successful enough to declare annual dividends of ten per cent.

After the year 1891 the company's affairs declined, and continued to decline, to such an extent that in November, 1895, the Metropolitan Bank, a creditor of the New Orleans Brewing Association, for one hundred and thirteen thousand dollars, filed a suit for the amount of its claim, alleging, in substance, that the corporation was insolvent and asking for the appointment of a receiver to take charge of the property and assets of the corporation and administer them for the benefit of the creditors.

This action of this creditor met with the approval of the Board of Directors, as is made manifest by the following:

"New Orleans November 4th, 1895.

"It was moved, seconded and unanimously carried, that the president be, and he is hereby authorized to consent to the appointment of a receiver; that in this behalf he be authorized to file and make such pleadings as plaintiff or defendant, or confession of judgment, as may be necessary or proper; and that the appointment of A. G. Ricks be recommended to the court."

The court, accordingly, appointed Ricks receiver of the association.

After his appointment, the receiver administered the affairs of the corporation, received its funds, and paid out some interest, and some of its debts in whole, or in part.

In May, 1899, the receiver, finding that the association no longer prospered, and that its business was on the wane, concluded that it was best to sell the property and liquidate. He sets forth his reasons in one of the petitions of record, viz.: "War tax on beer," "cheap wines," "increased competition" and "less consumption of beer," as rendering it impossible to successfully operate the breweries of the association. Alleging, specially, his want of funds to continue operations, he complied with Statute 150 of 1898, by having his application properly entered in the District Court for the sale, and had a copy of his petition mailed to each creditor.

Charles Roth filed an opposition to his application, which was subsequently abandoned. Mason and Hein also filed oppositions. There was a trial had. These opponents did not appeal from the judgment which was rendered.

Blaffer, Hernsheim and Merrilh, creditors, appeal, as third persons, from the judgment, and claim authority to appeal under Article 571 of the Code of Practice.

These creditors, appellants, set forth that they are the holders, in indivision, of over one million dollars of negotiable mortgage bonds of the defendant associations, with interest coupons maturing June 1st, 1899.

They aver that the following mortgages mentioned in the act of mortgage, before referred to, as outstanding, namely: A mortgage of $85,000 by the Louisiana Brewing Association, a mortgage of $70,000 by the Lafayette Brewing Company, and a mortgage by the Pelican Brewing Company, have been paid and cancelled; that the mortgage for $200,000 by the Crescent City Brewing Company,

included in the act, has been reduced by payment to $180,000, and the mortgage for $75,000 by Weckerling Brewing Company, set forth in the act, has been reduced by payment to $30,000; that the mortgage for $180,000 covers only the plant of the Crescent City Brewing Company, and the mortgage for $30,000 covers only the plant of the Weckerling Brewing Company, and that with this exception the mortgage of those appellants is a first mortgage priming all claims.

Appellants also aver that the interest due on their bonds has been paid to December 1st, 1898, and that on June 1st, 1899, when the judgment here complained of was rendered, the principal of their bonds was not due, and there had been no default in matter of the payment of interest.

In their motion for the appeal, appellants further set forth that they are "prejudiced by the judgment which was rendered, because "the District Court assumed that the property would be sold at a "price less than sufficient to discharge the mortgage indebtedness "held by them and others, and because (the court held) it was pos- "sible to scale down the mortgages as directed in the distributive "clauses of the judgment, and it could lawfully provide for appor- "tioning the mortgage indebtedness upon different pieces of prop- "erty mortgaged to secure the mortgage—the extent to which each of "the pieces is to be subject to the mortgage to be determined by the "opinion and report of the appraisers appointed; that, as to the "relative value of the different parts of the property mortgaged, and "for the scaling down of the mortgage indebtedness subdivided, the "property is worth less than the amount for which it is mortgaged."

These appealing creditors further aver that they intend to bid on the property, and they apprehend that the title under judgment, from which they appeal, would not be valid, for the reason that the judgment orders a sale for a price insufficient to discharge the mortgage indebtedness, in so far as it apportions the mortgage indebtedness among different pieces of property; that the decree in this respect is not binding upon them, and can not confer a good title upon pur- chasers at the sale, and it follows, may be subject to attack. And, further, that the judgment is illegal, because it fails to make provis- ion for payment, by purchaser at the sale, of cash to pay past due indebtedness on coupons of bonds secured by mortgage."

The judgment of the District Court is necessarily lengthy.

It orders a sale, at public auction, of all the property.

The property is to be offered for sale in one lot, the purchaser to pay ten per cent. cash. That immediately thereafter the property be offered in lots, as follows:

"That separate lots be made of each of the breweries owned by the "defendant, and separate lots to be made of other real estate, and "separate lots to be made of the movables in use at each of the brew- "eries. One lot to be made of the office furniture, one lot of open "accounts, notes and judgments, and lots to be made of the property "of the defendant outside of the city of New Orleans; one lot in "each locality.

"If the total of the adjudication at such sale, in lots, does not "exceed the amount of the adjudication, when sold as a whole, then all "the adjudication in lots shall be as if not made; but if the total of "the adjudication into lots exceed the total of the adjudication in "bulk, then the purchaser of each lot shall deposit with the auction- "eer ten per cent. of the purchase price, and the whole matter shall "then be referred to the courts for confirmation of such sale as the "court may find to the best interest of all concerned."

With reference to the proceeds, the court orders that the *pro rata* price of the movables, as fixed by the appraisement, and determined by the sale and *pro rata* price of the Crescent City Brewing Company, be fixed and determined in the same manner up to the sum of $180,000, and that the same be done as relates to the Weckerling Brewing Company, also as relates to property outside of the city of New Orleans.

It is also ordered that the mortgages representing the bonds that may be outstanding, be assumed by the purchaser to the amount of the bid.

We need not set forth all the details of the judgment from which the creditors appeal. The foregoing is sufficient to give an idea of its purpose and scope.

1st. The right to appoint the receiver, we take it, is not seriously questioned. He was appointed with the consent of the Board of Directors. No objection was made by any one in interest to this appointment. Without a direct attack, we take it, the appointment must stand.

The first attack ever made was made by creditors on appeal. It follows that the attack is not direct, but entirely collateral. The appointment was made at the instance of the Metropolitan Bank, a

creditor for a large amount. We infer that there was no objection to the appointment at the time it was made.

2nd. The serious questions before us relate to the right of the mortgage creditors, and the extent of the effect of Statute No. 159 of 1898.

With reference to appellants' contention, that they, as mortgage creditors, were not parties to the suit, and, in consequence, no order of sale could issue, we have this to say: The statute under which the receiver acted gave authority to the court to issue the order of sale after having complied with the requirements of the statute cited *supra.* We understand that notice was, as required, given to all the creditors, including, of course, the appellants. Under the law, with the authorization of the court, the receiver may make a sale of property, and as we read the pleadings, he complied, as relates to the notice, with the statute.

We do not understand that every creditor who does not choose to intervene in the proceedings, or to file any appearance of any sort, after the notification required by Section 8 of the statute, retains all his rights to object as have third persons. Provision was made for a statutory notice by which all parties are bound. It was evidently not the object of the statute that, upon every application brought under Section 8 of the statute, more notice should be given than was given in this case. After notification it is incumbent upon the creditor to protect himself by filing such plea to that end as he may see proper.

As *in concurso,* no creditor has a right, or simple motion, to an order of sale affecting the rights of third persons, without giving notice. 7 N. S., 425, Saul vs. His Creditors.

In the case before us the creditors had notice.

The property, by the appointment of the receiver, was in the hands of the law, under the protection and control of the court and subject to sale, as ordered here.

The receiver has complied with the statutory mode in making the application. While he must be held to the formalities required in making a public sale, we do not think that as to notice he should do more than comply with the statute cited *supra.*

Moreover, two of the appellants, owners of claims in indivision with the other parties to the appeal, testified when the application was made before the court for the sale, and one of the two, as a witness, said that the sale was advisable.

The Metropolitan Bank joined the receiver in applying for the sale.

3rd. The statute, as relates to this application for sale, reads: "The court may, on application of any party at interest, after ten days' notice of such application on the order book, order the sale of the property."

The appellants, Blaffer *et al.,* urge that a receiver is not "a party at interest," within the meaning of the law; that he is the custodian of the property, the representative of the court, the instrument by which the property is taken and held *in gremio legis;* that his duties are to protect and conserve and manage the property pending the settlement of the rights and claims of those who are parties to the suit. in which he was appointed, and we think, that in addition, the duty also devolves upon him of informing the court when it becomes manifest that the property of the corporation can not be so administered as to pay its debts, and the possession thereof restored to the corporation; that a sale would be proper. In that light he is a party having an interest.

He has interest in the proper settlement of the affairs of the corporation; besides, we have seen that a creditor joined in the application.

4th. This brings us to appellants' objection to the sale of the property for an amount less than the mortgage debt, without keeping account of their (appellants') special mortgage.

The property in the hands of a receiver is no longer subject to seizure and execution. It must be sold in due course of law.

This was, as we take it, the legislative intention in enacting the following into a statute:

"Where the court has appointed a receiver, and it is made to appear that there is no reasonable ground to believe that the property of the corporation can be so administered as to pay its debts and the possession thereof restored to the corporation, the court may, on application of any party in interest, after ten days' notice of said application in the order book, if there be no opposition, or after hearing, if same be opposed, order a sale of the property and the distribution of the assets in accordance with the rights of the parties in interest." Statute. ——.

The language is clear enough. The court has authority to order the

sale and the distribution of the assets in accordance with the rights of the parties.

5th. Appellants, Blaffer, Hernsheim and Merrilh propound the inquiry: "Was the court authorized to provide for a sale of the mortgaged property in separate lots and for a prorating of the liens of the mortgage based upon the reports of the appraisers?"

They add, "By the mortgage contract the lien of the mortgage given to secure appellants' bonds, bears in its entirety upon each piece of property covered thereby."

They contend further that the law does not authorize a court to apportion a lien of such a mortgage according to the opinion of the appraisers as the relative value of the different portions of the mortgaged property. The practical effect will be, we are informed, that if the *pro rata* share of the proceeds of the sale attributable to the Crescent City Brewing Co. be less than the special mortgage of $180,000, resting on that property, there will remain a question of the right *vel non* of other mortgage creditors.

We can only say in meeting this position that the statute treats the creditors as if they were parties as in a *concourso*.

The forming of lots and the appointment of appraisers to fix values of the respective lots is usual and has the sanction of both law and precedents. Of course, the property must be sold subject to the laws regarding appraisement of property sold at judicial sale.

In addition, in its discretion, the court could, as it did, appoint appraisers in order to apportion the price of the sale among the properties encumbered by mortgages. While the court is bound to see to the distribution of the assets in accordance with the rights of the parties, it is vested with some discretion in matter of fixing these rights.

After hearing the testimony, the court, in its discretion, ordered a sale of the property on terms and conditions most advantageous, in its judgment, to all concerned.

We have not found that any other step can be adopted more beneficial to the creditors. Since they must look to the proceeds for payment, and mortgages are only retained in so far as they are unmatured, (to the extent of the bid), the order of a sale in this case is as just and equitable as any that might be suggested.

We are convinced that, under the statute, property cannot be taken from the possession of the receiver after a sale has been ordered and

be made to await the creditor's pleasure in matter of foreclosing his mortgage.

6th. Appellants complain of an intended sale ordered before the maturity of the mortgage debt and before default in the payment of interest.

Our answer is, the appointment of a receiver was, in effect, a surrender of the property to the creditors. It was as it is in a cession. When a cession is made, all debts due by the insolvent are deemed to be due. But the court could, in its discretion, since a sale was needful in the interest of all concerned, and since there were large amounts due, order the sale to pay in cash the debts due and exigible; and on credits to meet the amount of the bid maturing, taking into account, always, the respective rights of each.

The creditors here, who are the appellants, have no cause to complain, as we infer that they desire that the property be sold for its value. The sale might have been ordered for cash. The court ordered the property sold, subject, to the extent of the bid, to mortgage indebtedness as it matures.

The court, after hearing the witnesses and considering the condition of defendants' affairs, had authority to order a sale to pay debts. The evidence discloses that there was no fund on hand even to pay debts. In view of this strait in defendants' affairs, a sale (on terms and conditions ordered), in our view, was advisable.

7th. Counsel for appellants, Blaffer, Hernsheim and Merrilh, invite our attention to that part of the decree which provides that should the proceeds of the property not covered by appellant's mortgage be not sufficient to pay the costs and expenses of the receivership then a sufficient amount to make up the deficit shall be paid in cash, out of the proceeds of the sale of the mortgaged property, and the amount of the mortgage assumed by the purchaser shall then be reduced to the residue of the price.

From the foregoing counsel infers that the mortgage creditors will have to pay the expenses of a protracted receivership not provoked by them, (they allege), during the entire duration of which their hands were tied by the regular payment of all interest due.

Our answer is, that the payment of interest by the company to its creditors was not cause sufficient to prevent them from taking steps in opposition to the appointment of a receiver.

With reference to the charges, i. e., receiver and other charges,

they should be equal to the services rendered. If, under the law, they are considered more than they should be, it concerns another branch of the government.

In any event, we do not think it follows, from the provisions complained of in the decree, that the mortgage creditors will be called upon to pay more than they should.

8th. It is evident, as we read the statute, that the object of the statute was to enable parties in interest to avoid a muliplicity of suits and expenses as far as possible and to avoid the consequent costs and charges.

The property would be sold with great difficulty and consequent charges and delays. It being in the hands of a receiver, we did not find it possible to take it from his possession, in order that it may be subject to executory process.

Under the statute, in our judgment, the application to sell having been made contradictorily, was as if the proceedings were instituted in the name of the mortgage creditors seeking to foreclose their mortgage.

We have had to deal with an insolvent corporation.

As we understand, after the sale of its property and the distribution of its assets, under the court's supervision, it passes out of existence.

The laws regarding insolvency must to some extent be complied with in adjusting the rights of parties, otherwise the purpose of the statute, to bring about a settlement and liquidation of the corporation's affairs, would be thwarted.

We have not found, in interpreting the statute of 1898, that mortgages are to be excluded from its grasp; that it is possible to have the property returned to the corporation, to be subject to executory proceedings.

9th. We pass to the objection, argued by plaintiff, to the terms of sale, on the ground that no provision was made for the payment of matured and unpaid coupons. We understand that all other claims actually due on the day of sale, are to be met so far as feasible: we have no good reason to exclude the matured and unpaid coupons.

Counsel for the defendant states in the brief that no objection will be urged if this court, in its judgment, should deem proper to provide for this cash payment.

We think in this respect there should be modification of the decree,

in order to place all the creditors, with claims actually due, on the same footing.

For reasons assigned, it is ordered, adjudged and decreed that the order of sale which reads, "And the *pro rata* price of the other real property, embracing that covered by the mortgage passed before Joseph D. Taylor, Notary, on the 31st day of May, 1890, securing the first bonds of the defendant, to be retained by the purchaser, and said mortgage representing such bonds as may be outstanding, shall be assumed by the purchaser in proportion to the amount of the bid," be amended to this extent, that the purchaser shall on the foregoing unmatured mortgage and all unmatured mortgages, pay cash on his bid, the matured and unmatured coupons.

As amended, the judgment of the District Court is affirmed at appellee's costs in this court.

Mr. JUSTICE BLANCHARD and Mr. JUSTICE MONROE take no part in this judgment.