BREAUX, G. J.
The questions for decision arose in the course of the proceedings in matter of the insolvency of the Bonita Mercantile Company, Limited.
It was represented to the court by the Bank of Monroe, in its petition, that the company was insolvent and unable to continue with its business.
Upon the petition of the bank, J. J. Jordan, its cashier, was appointed receiver, and, as authorized by the appointment, went into possession of the assets.
An inventory was taken and appraisement made before a notary, which was filed on March 2, 1909.
The receiver attempted for a short time to carry on the business of the late firm, in order, as is somewhere stated in the testimony, to recoup the losses of the creditors.
This proved a failure.
There were creditors who favored this plan of settlement; others were very much opposed to it. The latter carried their point, and the result was that the receiver applied to the court to sell the property.
One of the creditors, the Witt Shoe Company of Virginia, opposed the application to sell the property, on the ground that Jordan was not legally appointed; that he was appointed ex parte, and without necessary notice duly entered on the court’s receivership docket; that no legal inventory had been made; that no meeting of creditors was held to advise the sale; and other similar grounds were urged.
The district court heard evidence on this application to sell.
The receiver testified that the property would not improve with age, and that, in view of the costs and other reasons stated, a sale was not only advisable, but necessary.
After having heard other testimony as between the Witt Shoe Company, opponent, and the receiver, the court decided, on the demand of the receiver, to order the sale Of the property for “cash, subject to appraisement.”
Another appraisement was made, and the assets of the Bonita Mercantile Company were appraised at:
Stock merchandise........33% on the dollar
Fixtures ................ 83% on the dollar
Open account and note.... on the dollar
Live stock (12 head), total $360
Pursuant with the court’s orders, the merchandise, except the live stock, and all other property was adjudicated in bloco to the highest bidder for the sum of $6,385, which was over two-thirds of the appraised value.
The live stock was sold separately.
Shortly thereafter, the receiver filed a tableau of receipts and distributions, showing:
Total receipts from every source...$ 7,S54 22
Privilege debts amounted to....... 2,S12 88
Ordinary creditors................ 18,542 89
There is an item carried on the account covering a disputed sum between the receiver and Hyman-Hiller & Co.
Mrs. A. M. Weiss opposed this account on the following grounds:
That the Bonita Company is indebted to her in the sum of $1,500.64, with 5 per cent, legal interest from date stated in the opposition, rental secured by lessor’s privilege from 1905 to 1908, both inclusive, and the first two months of the year 1909, at the rate of $250 per year.
She asked to have her claim credited on *1049 the account for the sum of $500.50 as an ordinary creditor, and, as a privileged creditor, for the sum of $1,041.64 and interest.
Mike Lewin also filed an opposition, claiming $1,483.26 for services as clerk of the Bonita Mercantile Company, asking that the account be amended, and that he be placed thereon as a creditor, to be paid by preference from the proceeds of the sale.
William T. Hardy & Co., another creditor, filed an opposition, setting out that it is a creditor for $1,498.
The opposition of Hardie & Co. is, in the first place, directed against the claim of P. Lewin and M. Lewin, on the ground that they are members of the Bonita Mercantile Company, and bound for- its debts; and that, in consequence, they have no right to recover anything from the company.
The same opponent opposes the claim allowed to the Bank of Monroe for $6,300 as excessive and illegal, and opposes the fee of attorney allowed to the bank on the amount.
Moreover, the receiver was the cashier of the Bank of Monroe; acting in its behalf, he took charge of all the assets and business of the Bonita Mercantile Company, sold goods, and collected debts, for which he did not account.
Again, this opponent charges that there was a damaging delay between the date of the order of inventory and the taking of the inventory itself; that the inventory did not represent all the property received by the receiver; and other charges are directed against the receiver.
Opponent further urges that the last inventory was made without the authority from the court, and that, in ordering the sale to be made, the court ordered that the first inventory be taken as the basis for the sale; that no order was applied for a second inventory; it was made without order; that the stock of goods and the notes, accounts, and books and fixtures were offered altogether, and that they were bid in by the president of the Bank of Monroe, and for the benefit of the bank, for the insignificant price of $6,385, in which bid Rice-Stix & Co. was interested; that there was no sale, particularly no sale of the notes and accounts which aggregated' the sum of $38,000; that they were illegally advertised and offered for sale in a lump, and thereby they were sacrificed.
That the receiver neglected to collect them.
The company asks that the account be rejected.
The judge ordered changes in the account, and, the changes having been noted, he approved the account.
In this judgment, the oppositions of W. T. Hardie & Co., of Sigor Bros. Company, and Mrs. Philip Lewin were rejected, and the opposition of Mike Lewin was sustained for $434.78, as a privilege claim for clerk’s hire, to be paid by preference over the proceeds of the sale of the stock of merchandise, notes and accounts sold by the receiver, and another claim to remain as heretofore allowed.
The opposition of the Central Savings Bank & Trust Company was sustained to the extent of $972.30, as an ordinary creditor.
The opposition of Hyman-Hiller & Co., to the extent of $3,500, together with interest, less credits, as stated in the judgment, all as an ordinary creditor.
The opposition of Mrs. A. M. Weiss, to the extent of $1,540.64, was sustained, and she was recognized as an ordinary creditor of the Bonita Mercantile Company to the amount of $500, together with interest, and as a privileged creditor on the proceeds of the sale of the stock of merchandise, notes, accounts, and fixtures in the amount of $104.-64, together with interest.
Wm. T. Hardie & Co. are the only appellants.
The receiver has not appealed, nor have *1051 any of the opponents, except Wm. T. Hardie & Co.
It follows that the appellees cannot have the judgment amended among themselves.
[1] Although not in the order of the issues as presented, as it is the most important issue, we take up the question growing out of the attack made by opponent against the validity of the sale.
The position of the receiver, Jordan, in answer to Hardie & Co., opponents, is that, the opponents not having in any way opposed the sale, this sale having been confirmed by the court’s decree after legal notice, this opponent (the Hardie firm) is without right to attack this sale in an opposition to a receiver’s account.
The grounds of Hardie & Co. in their opposition are that there were decided illegalities in the proceedings; and it is in answer to these grounds that the receiver takes the position just stated.
We have heretofore specifically stated what those grounds were. They have a threatening aspect, and, as an original proposition, the sale should not stand.
But matters are complicated and much is added to the task of deciding the questions involved by the delay of Hardie & Co. in urging the grounds which they now urge.
[2] The opponents, Hardie & Co., attack the proceedings conducted at the instance of the receiver on the ground of their irregularity, and asked that, as in the case of Sheets Lumber Company, the receiver be charged with the appraised value, amounting to over $35,000, as carried in the first inventory.
This is followed in the petition of opposition by the charge against the receiver that he illegally sold the property at public auction to the Bank of Monroe; and the inference to be drawn from the allegations was that there was collusion.
The charge is not sustained by proof. The evidence does not disclose that there was any collusive agreement.
He was, it is true, the cashier of the Bank of Monroe. That fact alone is not sufficient to establish collusion. The attorney of the receiver was the president of the bank. That of itself is not an illegality, although it would require less proof to show wrongdoing than ordinarily. That proof, if there is any such proof, was not introduced.
The opponents attack the sale of the property on various grounds.
Some of these grounds would surely have been maintained, had they been timely urged.
We will not take up each ground separately for the decision.
It will suffice to take up two of these grounds:
Hirst. That the reappraisement of the property was not made in accordance with the order of the court.
Second. That the property was sold in block.
These grounds are urged exclusively in the opposition to the approval of the final account.
Now, as relates to the second appraisement, which, according to the opponent was a nullity, because it had not been preceded by a required order:
In the judgment decreeing the sale of the property, reference is made to an appraisement; that is, it was stated that the sale should be made in accordance with appraisement. It is not clearly stated whether it was an appraisement to be made, or the appraisement in the inventory already made.
It was taken as meaning an appraisement to be made, and another appraisement was made, informally, it is true; still an appraisement was made.
An application was thereafter made to sell the property. Proper entry was made on *1053 the receiver’s book in the clerk’s office; parties in interest were duly notified; the present appellant did not offer the least objection to the sale.
The property was sold and adjudicated to the agent of the attorney who represented the receiver, and who was, we have stated, the president of the Bank of Monroe.
After the sale, again proper entry was made of the fact in the clerk’s office. The receiver applied to the court for its approval of the sale; no one opposed the application, although all were notified.
Not the least objection was offered; it follows that no appeal was taken at any time, and the judgment remained in full force.
In the opposition of Hardie & Co., the point is urged that the property was sold in block. That is true. We are of the opinion that some objection should have been urged at the time that the receiver applied to the court to approve and confirm the sale.
As relates to the proceedings in court, all of the parties were in court.
It was to some extent as it is in a concurso, or a concurso de acreeditores, to quote the Spanish technical term.
[3] It is late in the day in matter of this litigation to set aside the sale.
The Bank of Monroe and the attorney are not parties to the suit, especially the latter.
The issue is not made up and presented in a way that would justify us in setting aside the sale.
Conceded for a moment that we should undertake to set aside the sale, the property was movable and perishable.
Since the sale, that which has survived the effect of time, it is entirely probable, has changed hands.
The only action possible (if there is an action possible) would be in damages.
We cannot pass upon questions of damages when no damages are sued for; besides, the parties are not before the court.
So that as relates to the alleged irregularities in matter of the appraisement and in matter of the sale in bloco, nothing can be done at this time in opposition to the account.
We are asked that, as in the Sheets Lumber Company Case, before cited, we charge up the receiver with the amount.
The receiver, different from what it was in the cited case, did not buy the property; and therefore he cannot be charged with the value with which a receiver who acts wrongly may be charged.
On leaving this ground urged by opponent, we will notice another similar to the foregoing in some respect.
The objection is that the notes of the corporation should have been collected, and not sold.
In answer, we will state that the evidence is that the notes were not collected because of their little value, and had to be sold.
To summarize in conclusion: No appeal was taken from the order to sell the property, nor from the judgment affirming the sale. See Metropolitan Bank v. N. O. Brewing Association, 51 La. Ann. 1525, 26 South. 418.
The statute of 1898, Senate Bill No. 102, par. 10 (Act No. 159 of 1898), de receiver and insolvent or other corporations: In proper case the court may, on application of any one in interest, after 10 days notice in the judge’s book, if there be no opposition, order the sale.
Special opposition, that of the two Lewins:
The opposition of M. Lewin, claiming $437.-76, was properly maintained with privilege as allowed on sale of the stock. This was *1055 in addition to the amount allowed him on the account.
The evidence, although it was alleged that he was a stockholder, does not sustain that allegation.
The claim of the Bank of Monroe:
[4] The bank appears on the account for an amount of $6,300.
The main objection to this claim is that it is not proven; that it is excessive and illegal.
Opponent particularly opposes the fee of attorney.
This opponent (Hardie & Co.) avers in Its petition that the two notes of $2,500 each, held by the bank, were not due at the time the bank applied for the appointment of a receiver.
This is beyond question — that the bank held the twp notes.
The opponent further avers that these notes were given to the Bonita Mercantile Company for advances made by the latter, and that the failure of said bank to carry out its agreement caused loss.
The allegations admit the notes as due. It is stated that they were filed in evidence.
The amount of the notes themselves was admitted as due.
Fee of attorney:
The notes signed by the Bonita Mercantile Company are due to the Bank of Monroe. They are admitted by the opposition as notes of said maker due to the said bank.
Opponent denies that the fee of attorney is due to the Bank of Monroe.
•We are of opinion that the opposition is correct in this respect.
True the notes contain the following:
“And ten per cent, addition for attorney’s fee, if sued upon or placed in the hands of an attorney for collection.
The notes to recover thereon must surely be placed in the hands of an attorney for collection.
There is no proof that these notes were sued upon or placed in the hands of an attorney for collection.
If a note is sued on, the unavoidable inference is that the fee is due as claimed.
There was not a word of evidence about the fee of attorney.
For all we know, these notes may have been handed to the receiver by the creditor to have them placed on the account. At any rate, there is no evidence that any attorney has ever had them in hand for collection.
The claim of Mrs. Weiss:
This claim was not allowed by the receiver.
This creditor opposed the account of the receiver.
Two witnesses testified in support of her claim. It is abundantly proven that the amount is due as allowed.
We have not found wherein the court erred, both as relates to the ordinary claim or to the claim secured by privilege.
She was the lessor of the company. The Bonita- Mercantile Company occupied her property as tenants.
The ordinary claim was also sustained by proof.
We take up next the claim of Hyman-Hiller & Co.
It appears that this firm had on hand 138 bales of cotton at the date the receiver took charge and went into possession.
The receiver reserved $300 on the proceeds to pay costs to recover this cotton.
The argument on the part of the opponent is that this cotton should have been surrendered, and the proceeds distributed as a common fund.
The statement o"f Hyman-I-Iiller & Co. shows that the 138 bales of cotton were sold and credited after January 12, 1909, when the company went into the hands of a receiver.
The judge allowed this claim of Hyman-Hiller & Co., and ordered the receiver to place it on his accotmt.
*1057 The three notes due to this firm were filed in evidence, each for $1,750, accompanied with a statement of Mr. Hyman, of the firm, which was admitted without objection.
We are of the opinion that there was sufficient proof to allow the claim, especially in the absence of all evidence to the contrary.
It is therefore ordered, adjudged, and decreed that the judgment and account be amended by striking and excluding therefrom the fee of attorney allowed to the Bank of Monroe.
With this amendment, the judgment appealed from is affirmed; the costs of appeal to be paid by the mass represented by the appellee.