PROVOSTY, J.
This is a proceeding under Act No. 38, p. 38, of 1908, to establish the title to 12 vacant lots of ground in the city of New Orleans.
The plaintiffs are the widow and heirs of J. B. Moore; the defendants are the heirs of Henry St. Paul.
The plaintiffs trace title to the government grantee; and defendants no further back than 1848, when Henry St. Paul acquired at a sheriff’s sale made in a proceeding against a person not owner.
[1] Defendants object to plaintiffs being' allowed to prove title further back than 1859, on the ground that title further hack than this has not been alleged. The allegation of plaintiffs in that regard is that they are owners of the property as widow and heirs of J. B. Moore, who acquired in 1859 from J. B. Robertson. There is no allegation of how Robertson or his authors in title acquired. A general allegation of this kind is open to the objection of vagueness, and, on exception, a plaintiff will be required to give in full the chain of title upon which he relies; but such an allegation of ownership, however general it may be,, is an allegation of ownership, and, as such, opens the door to proof of ownership — saving always the right of the court to extend' relief to the adverse party in case of surprise.
[2] ’Defendants’ chief reliance is upon the-plea of res judicata. That plea is founded upon a judgment rendered in the suit of In re Quaker Realty Co., Limited, No. 82,837' of the civil district court, parish of Orleans.. That suit was a proceeding under Act No. 101, p. 127, of 1898, entitled “An act to» provide a manner and form of proceedings; to quiet tax titles.” The Quaker Realty Company claimed title through an adjudication of the property at tax sale to the state, and a purchase from the state, and. instituted said proceeding to quiet this tax. title. It cited, as defendants, all parties, who were supposed to be setting up pretensions to the property. These were the parties to the present suit, except that, instead of the present plaintiffs, their author in title, J. B. Moore, was cited, though he had long been dead. The whereabouts of J. B. Moore was alleged to be unknown, and a curator ad hoc was appointed to represent him — as is authorized to be done in such case by said Act No. 101 of 1898. The record does not show whether the *1085 present plaintiffs ever had notice of the suit, or knowledge, of its pendency; and the extreme probability is that they did not. They were then and still are residents of the state of Mississippi. They made no appearance in the suit. The curator ad hoc simply filed a general denial, with a prayer that plaintiffs’ suit be dismissed. Prom the record, it is evident that his functions in the suit were simply formal. The litigation was fought out between the Quaker Realty Company and the heirs of St. Paul. The latter filed an elaborate answer, in which they alleged that in certain confiscation proceedings, directed against Henry St. Paul, for treason and rebellion against the United States, entitled “United States v. Seventeen Lots of Ground,” the lots 1 to 7 of said 12 lots of ground were adjudicated to James Reed and Rufus Waples, and the lots 8 to 12 to Carl Stoll, and that said lots had been subsequently assessed to these parties and adjudicated to the state for the taxes thus assessed, and had thereafter been sold by the state to the Quaker Realty Company, and‘that said confiscation proceedings had divested only a life tenure in said lots, and that at the death of Henry St. Paul said lots had reverted to his heirs free of said tax sale. They prayed that plaintiff’s demand be dismissed; that the said tax sale to the state and said sale by the state to the Quaker Realty Company be annulled; and that they “be quieted in the ownership, possession, and enjoyment of their said property.”
There was no allegation as against J. B. Moore, and no prayer as against him, unless the prayer just recited can be considered to have been such.
The trial judge gave judgment in exact accordance with the said prayer of the heirs of St. Paul. In his written reasons for judgment, however, he dealt with the case exclusively as between the Quaker Realty Company and the heirs of St. Paul. He said nothing with reference to the title as between J. B. Moore and the heirs of St. Paul. That phase of the case was evidently not considered at all. The judgment was-affirmed on appeal to this court. In re Quaker Realty Co., 122 La. 229, 47 South. 536. Like the trial judge, this court dealt with the case exclusively as between the Quaker Realty Company and the heirs of St. Paul, and did not consider it at all as between J. B. Moore and the heirs of St. Paul.
[3] The reason why neither court considered the case as between the heirs of St. Paul and J. B. Moore was that there was no-call to do so. A proceeding under said Act No. 101 of 1898 is not one to test the title to the property as between all parties in interest, but merely to test the tax title. The only title that can be litigated in such a proceeding is the tax title. Only by consent of the plaintiff in such a proceeding could the other parties to the proceeding be-allowed to litigate the title inter se.
As a matter of fact, the Quaker Realty Company did undertake to litigate the title as between J. B. Moore and the heirs of St. Paul; but the court declined to go into that inquiry, assigning as its reason that the Quaker Realty Company was claiming exclusively under St. Paul, and therefore could not contest the title of St. Paul; that, if St. Paul had no title, then it had none.
[4] The curator ad hoc authorized to be áppointed in a proceeding under said Act No. 101 of 1898 to represent the former owner of the property, or tax debtor, when the latter or his residence is unknown, has: no authority to represent the unknown or absent owner on any other issue than that of the validity vel non of the tax sale; or to litigate with any one except the purchaser *1087 at the tax sale. The statute reads, as follows :
“Section 1. Be it enacted by the General Assembly of the state of Louisiana, that the manner of notice and form of proceedings to quiet tax titles in accordance with article 233, of the Constitution, shall be as follows:
“After the lapse of twelve months from the date of recording the tax deed, in the conveyance records of the parish where such property is situated, the purchaser, his heirs or assigns, may institute suit by petition and citations as in ordinary actions against the former proprietor or proprietors of the property, in which petition must appear a description of the property, mention of the time and place of the sale and name of officer who made same, reference to page of record book and date of record tax deed, notice that petitioner is owner of said property by virtue of said tax sale, and notice that the title will be confirmed unless a proceeding to annul is instituted within six months from date of service of the petition and citation. This suit shall be brought in the parish where the property is situated unless it lies in two or more parishes; in which case this suit may be instituted in either of such parishes. The petition and citation shall be served as in ordinary suits; provided that if the former proprietor be a nonresident of the state, or be unknown, or his residence be unknown, the court shall appoint a curator ad hoc to represent him and receive service, and said curator shall receive for his services not more than ten dollars, same to be taxed as costs of suit. After the lapse of six months from service of petition and citation, if no proceeding to annul the sale has been instituted, judgment shall be rendered quieting and confirming the title.”
' This statute describes what notice, or citation, shall be served upon the curator ad hoe. It requires him to be notified:
“That the tax title will be confirmed unless a proceeding to annul (the tax title) is instituted within six months from the date of the service of the petition and citation.”
This notice, thus required to be served upon the cú'rator ad hoc, is the measure of h'is authority to act for the absentee whom he is to represent. The statute does not authorize him to be cited to do anything more than this. He is not authorized to be cited by any one but the holder of the tax title, and not with reference to anything except the tax title. This is the measure and extent of his authority.
Therefore, if the curator ad hoc appointed in that case to represent J. B. Moore had undertaken to litigate said title as against the heirs of St. Paul, the result of the litigation would not have been binding on J. B. Moore (or his widow and heirs), for said curator would have been utterly without authority to represent J. B. Moore on that issue.
Both for that reason, and for the reason that the title was not in point of fact litigated as between J. B. Moore or. his widow and heirs and the heirs of St. Paul in said suit, the judgment in said suit is not res judicata of the present suit.
Mrs. Fannie Brown intervened in this suit, claiming title to two of the lots by the prescriptions of 10 and 30 years. Her ancestor bought these two lots in 1865 from George Shantz and Carl Stoll, the adjudicatees at the confiscation sale, and he at once built a house upon the two lots. He lived in this house continuously and uninterruptedly for some 20 years. The purchase was in good faith and by notarial act in due form, and was duly recorded. This makes out the prescription of 10 years.
[5] The notarial act of purchase recited that the vendors George Shantz and Carl Stoll had acquired the property “by virtue of a writ executed by the United States marshal of this district, issued by the United States District Court in the matter entitled U. S. v. 17 Lots, Property of H. St. Paul, as per deed dated 13th of September, 1865.”
Plaintiffs contend that by that' recital the purchaser was informed that the said suit of the United States against the said 17 lots had been, a confiscation proceeding, and that only a life tenure had been divested by such a proceeding, and that consequently the ancestor of the intervener knew that Shantz and Stoll his vendors had acquired only a life tenure and that he was acquiring only a life tenure from them.
*1089 This argument takes for granted that a proceeding- entitled as above is necessarily a confiscation proceeding under the acts of Congress to suppress insurrection; but such is not the case. Our Code of Practice, art. 290 et seq., authorizes proceedings in rem in cases of abandoned property, or where the owner is absent. Again, non constat that the statutes of the United States did not at that time authorize such mode of proceeding in other cases than those under the Insurrection Act. We are not sufficiently familiar with those statutes to say whether they did or not, and have not time to investigate. The fact of the matter is that at that time it was 'supposed that, where, as in this case, the court had ordered the entire interest of the owner to be seized and sold, and this had been done, the entire interest passed, and not merely a life tenure. A decision of the Supreme Court of the United States was required to settle that point. Of course, if this purchaser could be charged with knowledge that said proceeding had been a confiscation proceeding, he would also have to be charged with knowledge that only a life tenure had passed, and that the Supreme Court of the United States so decide; but we are not disposed to stretch this imputed knowledge to the extent of holding that he must have known that a proceeding, entitled “U. S. v. 17 Lots of Ground Property of Henry St. Paul,” was necessarily a confiscation proceeding.
The judgment appealed from is therefore affirmed as between plaintiff and the heirs of St. Paul, but it is set aside as between the intervener and the other parties to the suit, and it is now ordered, adjudged,, and decreed that the intervener, Mrs. Fannie Brown, be and is hereby recognized to be owner of the two lots of ground purchased by Louisa Norris, wife of David Tillman, from George Shantz and Carl Stoll by act before John Bendernagel, notary public, on March 29, 1876; and that the defendant pay all costs of the suit.