(93 South. 758)

No. 23518.

**ROUSSEL et al. v. NEW ORLEANS RY. & LIGHT CO. et al.**

(July 17, 1922.   Rehearing Denied by the Whole Court Oct. 19, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Real actions ☞7(3)—Petitory action; party without title cannot stand in judgment against plaintiffs holding under judgment confirming their title.**

Where the defendant in a petitory action has neither title to the property nor title by prescription, it has no standing, and cannot stand in judgment against plaintiffs who hold under a judgment recognizing and confirming their title.

**2. Corporations ☞560(5)—Rights of third persons not prescribed by notice of application for sale of property in receivership proceeding.**

Under Act No. 159 of 1898, § 10, providing for 10 days' notice of an application for the sale of property in the hands of a receiver, such notice raises no prescription against third persons seeking to revendicate the property after its sale in the receivership proceedings.

**3. Public lands ☞210—Grant recorded in record of Spanish grant held sufficient evidence of title.**

A Spanish grant recorded in the book of Spanish grants delivered to the American authorities on the transfer of Louisiana is complete evidence of title, and hence it is immaterial that judgment recognizing and confirming such title was never recorded so as to affect third persons under Civ. Code, art. 2266.

**4. Judgment ☞858—Revival and reinscription of judgment in petitory action unnecessary.**

Under Civ. Code, art. 3547, providing that all judgments for money shall be prescribed in 10 years from their rendition, but that any person interested may have them revived before they are prescribed, a judgment in a petitory action recognizing and confirming title to land need not be revived and reinscribed.

**5. Adverse possession ☞40—Prescription; heirs recording title remain owners until barred by prescription, and need not again sue within 30 years.**

When heirs have instituted suit for the recovery of immovables within the prescriptive period of 30 years, and they obtain title, they need not again sue within the next succeeding 30 years, but remain owners until their ownership has been lost by prescription of 10 years acquirendi causa, or by the prescription of 30 years under a claim of ownership without title, and based upon actual possession under Civ. Code, art. 3499.

**6. Adverse possession ☞40—Prescription; one not manifesting ownership for 30 years does not lose ownership in absence of adverse possession.**

Under the prescription liberandi causa, Civ. Code, art. 3548, construed with articles 496, 3457, and 3499, et seq., an owner not manifesting his ownership for 30 years does not lose his ownership or right of action to recover the property from one who within the 30 years has taken possession of it in the absence of adverse possession for 30 years.

**7. Real actions ☞7(3)—Petitory action; title from one who had no title cannot defeat recovery in absence of actual possession for prescriptive period.**

Outstanding titles to land acquired by conveyances from one who had no title were invalid, and could not be successfully opposed to recovery of the property in controversy, by the owners of the true title unless the holders of such invalid titles, or their authors in title, had actual possession during the prescriptive period of 10 years.

**8. Real actions ☞8(2) — Petitory action; plaintiffs held not to have disclaimed title to lots for which they did not sue.**

Though the heirs of L. sued the heirs of E. only for such parts of a tract of land as had not been disposed of by E. in his lifetime, where they asserted ownership of the entire tract, and the suit was dealt with as a petitory action for the entire tract, there was no judicial disclaimer of ownership of the parts of the tract not sued for.

**9. Real actions ☞7(1)—Petitory action; could not be brought against heirs of one disposing of land in his lifetime.**

Under Code Prac. art. 43, providing that a petitory action must be brought against the person in actual possession, such action could not be brought against the heirs of E. for lots previously disposed of by E. during his lifetime.

10. **Judgment ☞736—Petitory action; judgment against plaintiffs not conclusive against their title to land to which defendant disclaimed title.**

Where, in a petitory action, defendant disclaimed any title to, or possession of, land within the limits of a Spanish grant, but set up title to an adjoining tract of land, the judgment rejecting plaintiffs' demands was not res judicata against their claim of title to the land covered by such grant, especially where all the heirs of the person to whom the grant was made were not parties.

11. **Judgment ☞665—Not res judicata when parties not the same.**

A judgment is not res judicata in a subsequent action where the parties are not the same.

12. **Judgment ☞948(1)—Res judicata must be specially pleaded, and judgments and proceedings relied on set forth.**

When res judicata is relied upon it must be specially pleaded, and the judgments and proceedings relied upon as the basis of such plea must be specifically set forth.

13. **Appeal and error ☞173(9)—Suit and judgment not embraced in plea of res judicata or set up below cannot be urged.**

Where the proceedings and judgment in a certain suit were not included in a plea of res judicata, and were not passed on by the trial judge, error could not be assigned on the failure to sustain the plea predicated on such proceedings and judgment, as there must be some action or ruling of the lower court in a matter before it before error as to such ruling or action can be assigned.

14. **Eminent domain ☞266—Expropriation; plaintiffs in petitory action relegated to action for damages when part of property in possession of railroad company having power of eminent domain.**

Where part of the property sued for in a petitory action is in the possession of an electric railway company having the power of eminent domain and expropriation, plaintiffs will be relegated to a right of action for damages so far as the portion of the property in the railway company's actual possession and use is concerned.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Petitory action by Willis J. Roussel, administrator, and others, against the New Orleans Railway & Light Company and others. From a judgment for plaintiffs, defendants appeal. Amended and affirmed.

Farrar, Goldberg & Dufour and McCloskey & Benedict, all of New Orleans, for appellants.

Wm. Winans Wall, of New Orleans, for appellees.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. This is a petitory action brought by certain heirs of Jean Lavergne, and by Willis J. Roussel, administrator of the consolidated successions of certain other heirs of Jean Lavergne, to recover lots 18, 19, 22, 23, 24, in square No. 1605, and a triangular piece of ground No. 14D, 300 feet front on Genois street and 52 feet on First Lake street, said property being located in the city of New Orleans.

Petitioners allege that Jean Lavergne, Sr., on August 1, 1771, acquired from the Spanish Crown a grant of land situated on Lake Pontchartrain, bounded on the east by the Bayou St. John, on the west by the Orleans Canal, and on the south by the Genois tract, and on the north by the waters of Lake Pontchartrain, and more particularly described as the suburb of Elkinsburg from a plan and survey made by Louis Bringier, Surveyor General, dated January. 10, 1832.

Petitioners aver that the property herein claimed by them constitutes a part of the Jean Lavergne Spanish grant, and their ancestors have never parted with or sold the portion of said land which they seek to revendicate in the present suit.

Petitioners allege that the defendants, the New Orleans Railway & Light Company, the Railways Realty Company, the New Orleans Coaster Company, and the Penny Wonderland, of which E. J. Weinhart is the proprietor, all Louisiana corporations, domiciled

in the city of New Orleans, are wrongfully in possession of said property without any title thereto.

The defendant the Railways Realty Company denies in its answer that plaintiffs have any sort or claim of title whatsoever to the property set up in their petition, or that the parties under whom they claim have ever had any title thereto, and, in bar of plaintiffs' demand, defendant pleads the prescription of 10 years, based upon a purchase of date May 24, 1909, from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, and made under an order of the civil district court of the Parish of Orleans in proceedings No. 86506 on the docket of said court.

Defendant the Railway Realty Company, averring that the petition for the sale of said property in said receivership proceedings lay upon the receivership order book for more than 10 days, that there was no opposition thereto, and that the said civil district court granting said order had jurisdiction in the premises, specially pleads the prescription of 10 days under paragraphs 4, 8, 9, and 10 of Act 159 of 1898.

Defendant Railways Realty Company also pleads the prescription under possession as owner for more than 30 years.

The defendant the New Orleans Railway & Light Company, for answer to plaintiffs' petition, avers that it is a public service corporation, duly incorporated under the laws of this state; that it does not now, nor has it ever, claimed ownership of the property described in plaintiffs' petition; that any possession which it has of any part of the property here in controversy is the right of use and occupation with the servitude of right of way, the whole as set forth in its answer to a certain rule for contempt filed in proceedings No. 19498 in the Supreme Court of Louisiana, entitled Willis J. Roussel et al. v. Railways Realty Co., 132 La. 379, 61 South. 409, 833, a copy of said answer being annexed to and made part of the answer filed by said defendant company in the present suit. The defendant the New Orleans Railway & Light Company avers that whatever rights it possesses as to the property in dispute were acquired by it in good faith from the Railways Realty Company, the recorded owner, and which acquired said property under a warranty deed from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company by virtue of a decree of the civil district court of the parish of Orleans rendered in the matter of the said receivership on the 29th day of April, 1909.

The defendant the Penny Wonderland, through C. H. Weinhardt, its proprietor, for answer to plaintiffs' petition, avers that it does not now, nor has it ever, claimed title to or ownership of the property described in plaintiffs' petition, and that the part thereof of which it may have possession it holds under a contract of sublease with the New Orleans Railway & Light Company. The defendant the New Orleans Coaster Company filed a similar answer.

On December 10, 1914, the defendants the New Orleans Railway & Light Company and Railways Realty Company filed a plea of res adjudicata, alleging that all matters and things set forth in the petition in this case had been finally adjudicated by the decree of the First judicial district court of the parish of Orleans in the proceedings entitled N. Lavergne v. Elkins Heirs, No. 13625 of the docket of said court, by final judgment rendered on August 23, 1838, as well as by the final judgment rendered in the proceedings entitled Heirs of Lavergne v. New Orleans, Spanish Fort & Lake Railroad Company, No. 11095, of the docket of the circuit court of the United States for the Eastern District of Louisiana, by a verdict therein rendered on April 16, 1886, which was made the judgment of the court on the same day, and

signed on the 21st day of April, 1886, and which decree was never appealed from.

After repeated continuances, from January 5, 1914, until April 26, 1916, the case was finally tried in part on the latter date, the defendants being absent and unrepresented, reserving the defendants the right to offer whatever documentary evidence they may have before the argument of the case. On June 7, 1916, after hearing further evidence and argument of counsel, the defendants being represented, the case was submitted, taken under advisement, and judgment in favor of plaintiffs was rendered and read in open court April 1, 1918, and signed in open court April 5, 1918. No oral testimony was taken in the case.

The defendants the New Orleans Railway & Light Company and the Railways Realty Company prosecuted a devolutive appeal to this court from the judgment rendered against them.

In the case of Lavergne's Heirs v. Elkins' Heirs, 17 La. 220, this court held that the grant made by Don Louis Unzaga, Spanish Governor of the province of Louisiana, to Jean Lavergne August 1, 1771, and found in the book of grants deposited in the land office at New Orleans, was sufficient evidence of title, and that the plaintiffs, the grandchildren of Jean Lavergne, had a sufficient title to the premises claimed by them under said grant. We also held that Harvey Elkins only purchased the site of the ancient fortification, or Ft. St. John, from the Secretary of War, which was not claimed by the plaintiffs, and that the locus in quo lay adjacent to it.

In the case of Roussel v. Railways Realty Co., 132 La. 389, 61 South. 413, we said on rehearing:

"The primordial title dates back to the days of the Spanish colonies. The land in dispute is situated near Spanish Fort. The first grantee was Jean Lavergne (under a Spanish grant), who died in the year 1823, leaving children who resided at a distance from this city. They knew very little of the property and gave it no concern. The government went into possession of the property and built a fort, which it afterward abandoned. The property, after it was abandoned by the government, was granted by the United States Government to Harvey Elkins. The heirs of Lavergne brought suit on their grant in the early 40's and recovered the property from the heirs of the late Harvey Elkins, grantee of the government. The Lavergne heirs, it was decided, had complete title to the land over which the United States government had erroneously sought to exercise dominion. * * * The suit of the Lavergne Heirs v. Elkins Heirs is reported in 17 La. 221."

In the case of Roussel v. Railways Realty Co., 132 La. 391 and 392, 61 South. 413, we also said:

"The most serious objection to defendants' claim [Railways Realty Company] is that the land does not belong to defendants; that they have no title. We will copy freely from the testimony of witnesses for defendants, as it has an important bearing upon this point. It shows that defendants had no title. One of the witnesses, a distinguished member of the bar, was quite familiar with these titles and with the facts connected with the property. He states: 'The object of building this fence was this (referring to a fence which was put up on the property in the year 1907): When I examined the title to the property in 1896, I discovered that there was no title to anything except the old Spanish Fort property, as shown by Celles' plan, except by possession.' "

We held that "the Spanish Fort Property did not include the property in contest," and overruled the pleas of prescription filed in the case. 132 La. 391, 392, 61 South. 409, 833.

The late Edgar Farrar, the distinguished member of the bar referred to in the opinion, explained in his testimony that prior to 1907 the New Orleans, Spanish Fort & Lake Railroad Company had no title to or possession of any property, except the Fort property, which did not embrace any of the property divided into lots. The only title alleged by the defendant the Railways Realty Company in the present case is that acquired

from the New Orleans, Spanish Fort & Lake Railroad Company at receiver's sale in the year 1909.

[1, 2] The defendant company is without standing in court, as it has neither title to the property in controversy, nor title by prescription, as the record in this case is barren of testimony to support the pleas of prescription of 10 and 30 years tendered by said company. The title of plaintiff has been twice recognized and confirmed by the decisions of this court. Having no title, defendant company cannot stand in judgment against plaintiffs, who hold under a judgment of this court. Under Act 159 of 1898, the appointment of a receiver can be provoked only by a creditor or a stockholder, and the 10 days' notice required by section 10 of said act clearly relates to oppositions to be filed by creditors of the corporation placed in the hands of a receiver, should they desire to resist the application for the sale of the property. Such notice was not intended, in our opinion, to be used as a plea of prescription against third persons, who may seek to revendicate the property after the sale of same in the receivership proceedings.

This court established no such doctrine, either in Re Receivership of Bonita Mercantile Co., 129 La. 1046, 57 South. 332, or in the case of the Metropolitan Bank v. N. O. Brewing Association, 51 La. Ann. 1525, 26 South. 418, cited by counsel for defendants. In each of these cases a creditor opposed the application for the sale of the property by the receiver. In the Bonita Mercantile Company Case, we merely held that an attack cannot be made by a creditor on a sale by a receiver by opposition to a final account, but that the opponent should have proceeded by a rule to show cause why the order "shall not be vacated," if there was any irregularity in the order directing the sale, or relating to the appraisement.

[3] Able counsel for defendants assign as error in their brief that, because the title of the heirs of Lavergne is founded on a judgment rendered by this court in 1841 (17 La. 220), and that judgment has never been recorded, it is therefore a nullity as to third persons. The original book of Spanish grants from the land office in New Orleans was produced in support of their title by the plaintiffs in the case of Lavergne's Heirs v. Elkins' Heirs. In this book was contained and recorded a complete grant of land to their ancestor, Jean Lavergne, bearing date in 1771, by Unzaga then Governor of the province of Louisiana. The records of concessions in the land office at New Orleans were delivered to the American authorities on the transfer of Louisiana, and were always considered as indisputable evidence of the grants therein contained. The recorded grant was by law complete evidence of title. Although the grant made to the ancestor of the Lavergne heirs in 1771 was found only in the book of grants deposited in the land office, this court held it to be sufficient evidence of title against Elkins' heirs, third persons, in the petitory action brought by the Lavergne heirs to recover the land covered by the grant. It is therefore immaterial in this case that the judgment rendered by this court in the case of Lavergne's Heirs v. Elkins' Heirs, 17 La. 220, was never recorded in compliance with article 2266 of the Civil Code, requiring such recordation to affect third persons. Lavergne's Heirs v. Elkins' Heirs, 17 La. 231, 232, 233; Act March 2, 1805, 2 Stat. 324; Land Laws, 520; United States v. De la Maza Arredondo, 6 Pet. 725, 8 L. Ed. 547; American State Papers, Public Laws, vol. 3, pp. 401, 407 (Nos. 8, 2, 3), and pages 172 and 249, 2 Birchard's Collection, 669.

[4] Counsel for defendants assigns as error the failure of the lower court to sustain the plea of prescription of 10 years, because

the judgment rendered in favor of the plaintiffs in 17 La. 220, was never revived, nor in any wise executed or possession taken thereunder. Article 3547 of the Civil Code provides that all judgments for money shall be prescribed by the lapse of 10 years from the rendition of such judgments; provided, however, that any person interested in any judgment may have the same revived at any time before it is prescribed. As the judgment rendered in favor of plaintiffs by this court in 1841 was not a judgment for money, its revival and reinscription was unnecessary.

Article 496 of the Civil Code provides:

"The ownership and the possession of a thing are entirely distinct. The right of ownership exists independently of the exercise of it. The owner is not less the owner because he performs no act of ownership, or because he is disabled from performing any such acts, or even because another performs such acts without the knowledge or against the will of the owner. But the owner exposes himself to the loss of his right of ownership in a thing if he permits it to remain in the possession of a third person for a time sufficient to enable the latter to acquire it by prescription."

There is no such adverse possession shown in this case.

[5, 6] Counsel for defendants also assigns as error the failure of the lower court to sustain the prescription of 30 years under article 3548 of the Civil Code. This article reads as follows:

"All actions for immovable property, or for an entire estate, as a succession, are prescribed by thirty years."

This prescription has no application to the present suit, for the reason that the Lavergne heirs instituted a petitory action and obtained title to the property in controversy in 1841 by a judgment of this court. The only prescription of 30 years applicable in this case, under such circumstances, would be the prescription of 30 years based upon actual and continuous possession as owner without title, under article 3499 of the Civil Code. When heirs have instituted suit for the recovery of immovables within the prescriptive period of 30 years, and have obtained title, it does not become necessary for them to sue again within the next succeeding 30 years. They remain the owners until such ownership has been lost, either by the prescription of 10 years acquirendi causa, or by the prescription of 30 years under a claim of ownership without title and based upon actual possession. There is no evidence in the record to support either of these prescriptions. Under prescription liberandi causa, Civil Code, art. 3548, construed with article 3457, article 3499 et seq., and article 496, an owner not manifesting his ownership in 30 years does not lose his ownership or his right of action to recover the property from one who, within 30 years, has taken possession of it; but adverse possession for 30 years is necessary to deprive an owner of his right to assert his title judicially. Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 South. 768.

[7] Counsel for defendant contend that, even though it should appear that the defendant, the Railways Realty Company, has no title to the property in dispute, yet the record discloses outstanding titles to lots 18, 19, 22, 23, and 24, and that these lots had been sold before the year 1836 by Harvey Elkins. In other words, their title antedated the title of the Lavergne heirs recognized by this court in 1841, and that for this reason the plaintiffs should not recover in the present action. These outstanding titles are derived from Harvey Elkins as the common author, and were paper titles. Elkins had no title to any of this property conveyed to these third persons by him. These outstanding titles are, therefore, invalid, and could not be successfully opposed to plaintiffs' recovery of the property in controversy, unless it should be shown that the holder of

these titles, or their authors in title, had had actual possession of the lots claimed by them during the prescriptive period of 10 years, and there is no such proof in the record.

This brings us to the consideration of the plea of res adjudicata. This plea is based upon the final judgment rendered on August 23, 1838, and signed on September 4, 1838, in the proceedings entitled N. Lavergne and Others v. Elkins Heirs, No. 13025 of the docket of the First judicial district court of the parish of Orleans, and also upon a verdict rendered on April 16, 1886, and upon the final judgment rendered thereon on the same day, and signed on April 21, 1886, in the proceedings entitled Heirs of Lavergne v. New Orleans, Spanish Fort & Lake Railroad Company, Number 11095 on the docket of the Circuit Court of the United States for the Eastern District of Louisiana.

In the case of Lavergne's Heirs v. Elkins' Heirs, 17 La. 225, we find the following description of Spanish Fort:

"The witnesses describe the site of the fort as a 'mound or elevation made by the Spanish government to build a fort on,' the extent of which was not more than one hundred and twenty feet, fronting the bayou, running back seventy or eighty feet, the foundations of which are (or were a short time since) existing, and further that 'all that belonged to the fort was within the walls.' "

[8] This is the property included in the grant from the United States government to Harvey Elkins. It formed no part of the Spanish grant to Jean Lavergne. It is not disputed that the lots herein claimed by plaintiff formed a part of this Spanish grant. It is merely contended that, because plaintiffs did not specially claim title to these lots in the suit of N. Lavergne et al. v. Elkins, No. 13025 on the docket of the First judicial district court of the parish of Orleans such omission on the part of said heirs is a disclaimer of title to said lots in the present suit. The heirs of Jean Lavergne allege in the petition in that suit that—

"Neither the said Jean Lavergne or the said Nicholas Lavergne or your petitioners ever alienated the above-mentioned tract of land (Spanish grant to Jean Lavergne), and that therefore it still is the property of your petitioners by representation of their father, Nicholas Lavergne, as heir of the late Jean Lavergne. Notwithstanding, which the late Harvey Elkins took possession of same some years ago, divided into lots, and sold some of the lots."

The petition of the Lavergne heirs further alleges that—

"The heirs of Elkins were put into possession of such portions of the aforesaid tract of land as were not sold by the said Harvey Elkins in his lifetime, which lots are Nos. 11 and 14 of a plan executed by Louis Bringier on April 7, 1831, and deposited in the office of Wm. Christy, notary public. And lots 14A, 14B, and 14C, and 14D, as also 89 other lots numbered from 40 to 89, according to a plan of the said Bringier dated January 10, 1832, in the offices of P. Williams Christy."

[9] The heirs of Lavergne could not institute a petitory action against the heirs of Elkins for the lots previously disposed of by Elkins during his lifetime, as such action must be brought against the person in actual possession. C. P. art. 43.

While suing only for the lots in the possession of the Elkins heirs, yet the heirs of Lavergne asserted in that suit their ownership of the entire Spanish grant also, and, under such conditions, it cannot be seriously argued that they disclaimed title to any part of said grant, or to any lot included in same. The suit of N. Lavergne et al. v. Elkins Heirs in the district court was dealt with in the opinion of the district judge and in the opinion of the Supreme Court on appeal (17 La. 220) as a petitory action for the entire grant to Jean Lavergne.

The district judge in his opinion states:

"This is a petitory action for a triangle of land included between the old Spanish Fort of the Bayou St. John, the land of B. Genois

fronting on said bayou and Lake Pontchartrain. The plaintiffs claim the property by a concession from Governor Unzaga to their ancestor, Jean Lavergne, dated August 1, 1771. The defendants hold in virtue of a sale made by the Secretary of War, under authority of an Act of Congress entitled, 'An act authorizing the sale of certain military sites.' 3 Stat. 520. This sale was made August 31, 1831."

The opinion of the Supreme Court begins with the statement:

"This is a petitory action, instituted by the heirs of their grandfather, Jean Lavergne, to recover a small tract of land lying on the shore of Lake Pontchartrain, near the mouth of the Bayou St. John, in the possession and claimed by the heirs of the late Harvey Elkins. The plaintiffs allege that their grandfather, Jean Lavergne, obtained on the 1st of August, 1771, from Don Louis Unzaga y Amezaga, Spanish Governor of the province of Louisiana, a grant or concession of land near the mouth of the Bayou St. John, on Lake Pontchartrain, bounded on one side by the lands of the post of Bayou St. John; and on the other by the lands of one Bellegarde, and on the third side by Lake Pontchartrain, forming a triangle." 17 La. 221.

We fail to find that there was in 1836 a judicial disclaimer of ownership of the land here sued for by the ancestors of plaintiffs, as contended by able counsel for defendant company. On the contrary, the then plaintiffs asserted title and ownership to the entire grant.

[10, 11] Suit No. 8693 of the docket of the civil district court for the parish of Orleans (subsequently removed to the Fifth Court of the United States) was a petitory action brought by some of the heirs of Jean Lavergne against the New Orleans, Spanish Fort & Lake Railroad Company to recover certain property within the limits of the special grant made to Jean Lavergne in 1771. The defendant railroad company disclaimed in its answer in that suit any title to or possession of any land within the limits of this Spanish grant, and set up a title derived by mesne conveyances from Harvey Elkins to the Spanish Fort property, lying east of the triangle

included in the Lavergne Spanish grant. Defendant company prayed in its answer that plaintiffs' demand be rejected. There was no prayer in said answer that defendant company be declared the lawful owner of the property claimed in said suit by the Lavergne heirs. The verdict of the jury and the judgment of the United States Circuit Court merely rejected plaintiffs' demands at plaintiffs' costs. Such judgment, in view of the pleadings in the case, though final, has not the authority of the thing adjudged. The answer of the defendant, the New Orleans, Spanish Fort & Lake Railroad Company, shows that it disclaimed any title to or possession of any land embraced within the confines of the Spanish grant to Jean Lavergne, and asserted title in itself to the Spanish Fort property, which is located east of the Lavergne grant, said title being derived by mesne conveyances from Harvey Elkins, the grantee of the Secretary of War of the Military Site of Post St. John on Bayou St. John. It cannot, therefore, be contended successfully in this case that said judgment divested the heirs of Jean Lavergne of their title to this Spanish grant, or to any part thereof, as there was no final adjudication in said case in favor of defendant company, decreeing it to be the lawful owner of the property claimed by the Lavergne heirs in that suit, and, indeed, it was legally impossible that there could have been, in face of the disclaimer of title on the part of defendant company to any land included within the boundaries of said grant. In addition to this, all of the heirs of Jean Lavergne were not parties to said suit, and said judgment is therefore not binding upon the plaintiffs in the present suit, who constitute all of the heirs of Jean Lavergne. A judgment is not res adjudicata in a subsequent action where the parties are not the same. Folger v. St. Paul, 130 La. 1082, 58 South. 890; In re Realty Co., 122 La. 229, 47 South. 536.

[12, 13] The plea of res adjudicata in this case is based, as shown by said plea, exclusively upon the proceedings had and judgments rendered in two suits, entitled N. Lavergne and Others v. Elkins' Heirs, No. 13-025 of the docket of the First judicial district court for the parish of Orleans, and Heirs of Lavergne v. New Orleans, Spanish Fort & Lake Railroad Company, No. 11095 of the docket of the Circuit Court of the United States for the Eastern District of Louisiana. It is well settled that, when "the thing adjudged" is relied upon, it must be specially pleaded, and the judgments and proceedings relied upon as the basis of such plea must be specifically set forth. Thompson v. Vance, 111 La. 548, 35 South. 741; Hinton v. Roane, 124 La. 927, 50 South. 798, 134 Am. St. Rep. 526. Able counsel for defendant company cannot, therefore, be permitted to assign in his brief filed in this case as error upon the part of the trial judge his failure to sustain the plea of res adjudicata predicated upon the proceedings had and judgment rendered in the suit of A. Lavergne et al. v. City of New Orleans et al. (Thomas Hardy) No. 24832, Third district court, and transferred to No. 3278, civil district court of the parish of Orleans, for the simple reason that said proceedings and judgment were not included in the plea of res adjudicata filed in this case, and were not passed upon by the trial judge because of their omission from said plea. There must first be some action or ruling of the lower court in a matter before it before error as to such ruling or action can be assigned; otherwise there is no error in this respect patent upon the face of the record. Moreover, in the suit of A. Lavergne v. City of New Orleans et al., only a part of the heirs of Jean Lavergne were parties plaintiff, and the judgment therein rendered is not binding upon the plaintiffs' in the present petitory action, who constitute all of the heirs of their ancestor,

the grantee of the primordial title under which they hold and claim.

We repeat here what we said in the Roussel Case:

"Finding no title in defendant [Railways Realty Company], it does not occur to us that the defendant is in a position to successfully urge that plaintiff had no title. * * * Now, as to the defendant: It has no standing in court. The defendant has no right to this property unless title is produced." 132 La. 393, 61 South. 414.

Plaintiffs hold by a judgment affirmed and reaffirmed by this court. No prescriptive title has been acquired by defendant the Railways Realty Company. It has no title from the Lavergne heirs, the lawful owners, and therefore cannot stand in judgment against plaintiffs in this case.

[14] Regardless, however, of the question of title herein presented, the defendant company, the New Orleans Railway & Light Company, while disclaiming title to the property in controversy, has acquired rights as to this property which should be protected, and for the protection of which said company has prayed in its answer filed in this case. It appears from the record that said company is a public service corporation, operating an electric line of railway in the city of New Orleans under a public franchise granted by said city; that said company has the power of eminent domain, and has constructed tracks and made other railroad improvements upon a part of the property herein claimed by plaintiffs. By virtue of its powers of expropriation and of eminent domain, the defendant Railways Company as a public service corporation, by Act No. 80 of the year 1908, and under the law of this state as announced by this court in the case of the Shreveport Traction Co. v. K. C. & G. R. R., 119 La. 759, 44 South. 457, had the right, in any event, had it been met by adverse possession, to have expropriated the locus occupied by its tracks and railroad improve-

ments now located on the property of plaintiffs. With a portion of this property in the possession of and use by defendant company, a public service corporation entitled to the right of eminent domain, the plaintiffs, the present owners, are limited and relegated to a right of action for damages in so far as that portion of the property is concerned, which is in the actual possession and use for railroad purposes by defendant public service corporation for the benefit of the public. Pons v. Yazoo & M. V. R. R. Co., 131 La. 313, 59 South. 721; Moore Planting Co. v. M. L. & T. R. R., 126 La. 872, 53 South. 22; McCutchen v. T. &. P. R. R., 118 La. 436, 43 South. 42; Mitchell v. R. R. Co., 41 La. Ann. 363, 6 South. 522; St. Julien v. Railroad Co., 35 La. Ann. 924; Bourdier v. Railroad Co., 35 La. Ann. 947; Railroad Co. v. City, 31 La. Ann. 478.

The call in warranty made herein upon the New Orleans Terminal Company and the New Orleans, Spanish Fort & Lake Railroad Company, through its receiver, was withdrawn and the default upon said call in warranty set aside, upon joint motion of the Railways Realty Company, New Orleans Terminal Company, and the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, without prejudice to the rights of the movers to press whatever claims they may have against said New Orleans Terminal Company and the New Orleans, Spanish Fort & Lake Railroad Company, through its receiver, upon its said call in warranty.

Prior to the judgment rendered herein by the lower court, Willis J. Roussel, administrator, departed this life, and his surviving widow, Mrs. Wilhelmine Schmidt Roussel, was appointed and qualified administratrix in his place, and made a party plaintiff on behalf of the consolidated successions represented by her late husband as administrator.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed·from be amended by ordering that the defendant, the New Orleans Railway & Light Company, be maintained in possession of the property of the plaintiffs now in its possession as a public service corporation, and now used by defendant company for railroad purposes, and that plaintiffs herein be relegated to an action in damages against the defendant, the New Orleans Railway & Light Company, for the value at the time of taking of the area so taken and used by defendant company, and for such other damages, if any, as the plaintiffs may have suffered as to the remainder of their property occasioned by such taking by defendant company; and it is ordered, adjudged, and decreed that said judgment, as amended, be affirmed. Appellees to pay the cost of appeal.

Rehearing refused by the WHOLE COURT.