LAND, J.
This is a petitory action to recover lots Nos. 8, 17, 4, 5, 1, 2, 15, 16, 20, and 21, in Elkinsburg, near the margin of Lake Pontchartrain on the south side of Bayou St. John, as per plan of L. Bringier, Surveyor General, made in the year 1831.
In the year 1882, the said lots, except lot 3, stood on the conveyance records of the parish of Orleans as belonging to the following named persons, to wit:
Lots 4 and 5 to Pierre Blanchard.
Lot 17 to Joseph Cockyane.
Lots 1, 2, 15, 16, 20, and 21 to Mrs. Mary Lowery Rankin.
There were no squares in the original plan of Elkinsburg, but an official map of the city of New Orleans was made in the year 1859, which located lot 1 in square No. 1607, lots 2, 3, 4, and 5 in square No. 1608, and lots 15, 16, 17, 20, and 21 in square No. 1605. A part of an adjoining body of land known as the Genois tract, which had never been subdivided into lots and squares, was designated as squares Nos. 1582 and 1583.
In 1882 and 1883, the above-described lots in Elkinsburg were placed on the assessment rolls of the parish of Orleans, in the names of their supposed owners, and as in squares Nos. 1582, 1583, 1605, 1606, 1607, 1608, bounded by Mexico, Genois, Passage, First, Fish, Lake, and Esplanade streets.
The taxes on the lots were not paid, and in 1885 lots bearing the same numbers were adjudicated to the state in four separate tax sales, and were described in the tax collect- or’s deeds as follows:
(1) “Certain lots of ground and improvements thereon in the Third district of the city of New Orleans, in squares Nos. 1582 and 1583, bounded by Genois, Mexico, Passage, Lake and Esplanade streets; said lots front on Genois street; which property was duly and legally assessed for in 1882 and advertised in the. name of L„ Rankin.”
(2) “One certain lot of ground and improvements thereon in the Third district of the city of New Orleans, designated as lot 17, in square No. 1582, bounded by Mexico, Genois, Lake and Esplanade streets; said lot No. 17 measures -front on Mexico street; which said property-was duly and legally assessed in 1882 and advertised in the name of Jos. Cockyane.”
(3) “A certain lot of ground and improvements thereon in the Third district of the city of New Orleans, designated as lot No. 3, in square No. 1582 et al., bounded by Mexico, Genois, Passage. Lake and Esplanade streets; said lot No. 3 fronts pn Mexico street; which said property was duly and legally assessed for 1883 and advertised in the name of Jos. Nixon.”'
(4) “Two certain lots of ground and the improvements thereon in the Third district of the city of New Orleans, designated as lots Nos. 4 and 5 in square No. 1582 et al., bounded by Genois, Mexico, Passage, Lake and Esplanade streets; which property was duly and legally assessed for 1883 and advertised in the name of Piex’re Blanchard.”
On May 14, 1908, these lots as above described were sold by the State Auditor to' Willis J. Roussel.
In August, 1908, the said Roussel filed suit in the civil district court against all the former owners to confirm and quiet the tax sales aforesaid, and obtained the appointment of a curator ad hoe to represent all the defendants. The said Roussel in his petition described said lots as they had been described in deeds from Harvey Elkins, made in 1831.
The curator answered, first, by a denial of' all and singular the allegations contained in the petition. Further answering, the curator averred that Jos. Nixon never was the owner of the property described in the petition, but it was John Nixon who purchased the property from Harvey Elkins in 1831, and that therefore the sale by the tax collector of the said property while assessed in the name of *384 Jos. Nixon was null and void. Further answering, the curator averred that L. Rankin was never the owner of the property assessed in such name, but that Mary Lowery Rankin purchased the same in 1834 from Dr. Young McDaniel, and that therefore the sale by the tax collector of said property while assessed in the name of L. Rankin was null and void. The curator prayed that the plaintiff’s petition be dismissed with costs.
After a delay of six months, the case was tried, ¿nd judgment was rendered in favor of the plaintiff confirming and quieting his tax titles to the lots as described in his petition, and recognizing Mm, as the owner of the property.
The notes of evidence show that the plaintiff offered the respective titles of John Nixon, Joseph Cockyane, Pierre Blanchard, and Mrs. Mary L. Rankin, to the lots described in the petition, together with copies of assessment rolls for 1882 and 1883, tax sales to the state and Auditor’s sales to the plaintiff. The curator objected to the admissibility of said titles and acts of sale on the ground of variance and repugnancy between the descriptions and the allegations. The objections were overruled by' the, court as going to the effect. The plaintiff proved by a witness who had examined the conveyance . records that the defendants .owned no other property in Elkinsburg except the lots described in the petition. No appeal was taken from the judgment.
The suit was instituted under Act No. 101 of 1898 to provide a manner of notice and form of proceeding to quiet tax titles in accordance with article 233 of the Constitution of 1898, against “the former proprietors of the property,” who were properly joined in one suit as defendants, as provided in section 2 of the same act. Plaintiff proceeded under section 3 of this act to confirm his tax titles alleged to have been quieted by the prescription of three years, as set out in article 233 of the Constitution.
The defendant, the Railways Realty Company, for answer, after pleading the general issue, admitted possession, but specially denied the alleged title of the plaintiff to the property described in the petition, and pleaded the prescription acquirendi causa of 10 and 30 years.
For further answer, the defendant averred that it purchased the property in question on May 24, 1909, from the receiver of the New Orleans, Spanish Fort & Lake Railroad Company, acting under an order of the civil district court for the parish of Orleans, and that the New Orleans Terminal Company, sole creditor and sole stockholder of said railroad company, intervened in the act of sale and warranted the title to said property.
The defendant called the said two companies in warranty to defend the suit, and, in the event of eviction, prayed for judgment over against them.
The warrantors filed an answer, the material averments of which may be summarized as follows:
On May 24, 1909, the conveyance to defendant was made as set forth in the answer. The sale included the property known as the “Spanish Fort Hotel and Park,” acquired by the railroad company, partly by purchase from Vincent Micas in 1879, and partly by the prescription of 30 years. The sale included the lots claimed by the plaintiff, most of which were swallowed up by Lake Pontchartrain more than 30 years ago. If any of the lots, or any part thereof, still exist, the defendant and warrantors admit possession and claim title thereto, and plead in bar of plaintiffs’ demand the prescription of 10 and 30 years. That the triangle of ground included in the plan of Elkinsburg was on August 1,. 1771, granted by the Spanish government to Jean Lavergne. That under an act of Congress, approved March 3, 1819, authorizing the sale of abandoned military reservations, Louis Cass, then Secretary *386 of War, sold to Harvey Elkins what purported to be the site of Ft. St. John; but the description included not only said site, but the whole of the Lavergne grant. In 1831, Elkins had a plan of the property thus purchased made by Bringier, Surveyor General, and by various notarial acts made sales as per said plan. Through original or mesne conveyances from Elkins, titles finally vested as follows:
Pierre Blanchard, lots 4 and 5.
Joseph Cockyane, lot 17.
Mrs. Mary Lowery Rankin, lots 1, 2, 15, 16, 20, 21.
Lots 3, 8, and 30 purchased by John Nixon were retransferred to Harvey Elkins; -and the title to lot 3 finally vested in Millaudon.
Harvey Elkins in 1830 sold the Spanish Fort site proper to Thomas Dixon and others, and defendant derives its title from Dixon et al. through a chain of mesne conveyances.
Lavergne’s heirs, in 1841, recovered, in a suit against the Elkins’ heirs, judgment for the whole tract known as Elkinsburg. See 17 La. 720. In that case the Lavergne grant of 1771 was declared valid by the Supreme Court of this state.
According to the official map of the city of New- Orleans, made in 1859, lot No. 1 of the plan of Elkinsburg falls in square No. 1607, bounded by First street, Fish street, Lake Pontchartrain, and Bayou St. John; lots 2, 3, 4, and 5 of Elkinsburg fall in square* No. 1608, bounded by First street, Second (or Esplanade) street, Fish street, and Lake Pontchartrain; and lots 15, 16, 17, 20, and 21 of the plan of Elkinsburg fall in square No. 1605, bounded by First street, Second (or Esplanade) street and Genois street.
The Spanish Fort site properly is'composed of the whole of squares Nos. 1606 and 1607.
After setting forth the descriptions of the property adjudicated to the state of Louisiana as shown by the four tax sales, the warrantors aver as follows:
“It thus appears that the description of all said property, as made in said sales and said deeds, was absolutely and radically null and void, as none of the lots belonging to the persons named were in squares 1582 and 1583, none of them were fronted on either Genois or Mexico streets, and the bounds even as given of squares 1582 and 1583 are impossible.”
The warrantors assailed the judgment quieting the tax titles of the plaintiff as procured by fraudulent representations and concealment of facts, and on the further ground that it was beyond the power of the court to render any judgment except to confirm the tax sale as made to the state in 1885.
Warrantors further aver that the Auditor’s deeds to said lots were absolutely null and void because, after the adjudication to the state, the lots were not advertised and offered for sale as. required by law.
The cause was tried in the civil district court, and judgment was rendered in favor of the defendants.
The plaintiff’s appealed to the Court of Appeal, which reversed the judgment below and rendered a -decree recognizing plaintiffs as owners of the lots described in the petition. The case is before us on a writ of review.
[1-3] We find it necessary to consider only the defense that the tax sales did not adjudicate to the state of Louisiana, and the Auditor did not sell to the plaintiff Roussel, the lots described in the petition in this suit, and the legal effect of the judgment quieting plaintiffs’ tax titles. The lots adjudicated are described as located in square No. 1582, or in squares Nos. 1582 and 1583. The addition of words “et al.,” in two of the tax deeds, adds nothing to the description. The lots claimed by the plaintiffs are not located in either of said squares, but in squares Nos. 1605, 1607, and 1608. Squares *388 1582 and 1583 were owned by Charles T. Soniat, and were assessed to him for the years 1882 and 1883, and the taxes thereon duly paid. Lots of the same numbers as those claimed by the plaintiff were assessed as located in squares Nos. 1582, 15S3, 1605, 1606, 1607, and 1608, bounded by certain streets. Such a description is void for uncertainty. It is argued however, by the learned and ingenious counsel for the plaintiffs, that the description in the assessment and tax deeds sufficiently identify the property when read in the light of the extrinsic evidence in the record. If this were a suit to reform a written instrument of the contracting parties, such evidence would be entitled to consideration. But the question before us is not what the assessor or tax collector intended to do, but what they actually did in the performance of their official duties. As a sale of lots in square 1582, or in squares 1582 and 1583, cannot convey lots in squares 1605, 1607, and 1608, it is evident that the lots in the latter squares were not adjudicated to the state and sold by the state to ■ Roussel, as alleged in the petition. Our registry laws would prove a trap to the public, if descriptions of property conveyed could be changed or varied by extrinsic evidence. A plaintiff in a petitory action must stand or fall on his title as recorded.
[4] The Court of Appeal did not hold that the descriptions in the tax sales and Auditor’s deeds covered the lots described in plaintiff’s petition, but decided the case on the theory that the judgment quieting the tax titles was a judgment in rem, and as such good against the world.
The suit to quiet the tax titles was brought pursuant to the provisions of Act No. 101 of 1898, against the former proprietors of the property. The act requires that such a suit be instituted “by petition and citation as in ordinary- actions,” and provides that “the petition and citation shall be served as in ordinary suits,” and that if the former proprietor be a nonresident, or be unknown, a curator ad hoc shall be appointed to represent him. There is no provision in the statute for notice to third persons by advertisement or otherwise.
The judgment in such a suit quiets and confirms the tax title as shown by the recorded tax deed. Where the defendant is represented by a curator ad hoc, such judgment is restricted to the validity vel non of the tax sale as made. Folger v. St. Paul, 130 La. 1082, 58 South. 890.
Article 233 of the Constitution of 1898 provides that:
“The manner of notice and form of proceedings to quiet tax titles shall be provided by law.”
The same article provides that:
“All deeds of sale made, or that may be made, by collectors of taxes, shall be received by courts in evidence as prima facie valid sales”
—and that no sale of property for taxes shall be set aside except on proof of dual assessment, or of payment of taxes, unless the proceeding to annul be instituted with certain delays. Hence the tax titles referred to in the Constitution are those evidenced by deeds of sale made by collectors of taxes; and the Act No. 101 of 1898 provides for quieting and confirming of tax titles as shown by recorded tax deeds. A judgment pursuant to the statute does not vest in the purchaser at tax sale any new title from the former proprietor, but merely concludes the latter from instituting any proceeding to annul the tax sale, as made, or from questioning its validity in any judicial proceeding.
[5] The judgment in question was not in rem but in personam, and bound no one except the persons who were cited as defendants.
*390 As stated, supra the curator ad hoc could litigate no issue except the validity vel non of the tax sales as made. Hence the judgment in so far as it recognized Roussel as owner was hrutem fulmen.
We think that the Court of Appeal erred in holding that the defendants in this case were concluded by the judgment quieting the tax title of the defendants.
The state of Louisiana was the vendor of the plaintiffs, and the state was no party to the suit to quiet the tax titles. The evidence shows that the Auditor refused to change or correct the descriptions of the property conveyed by him to the plaintiffs.
The case falls within the doctrine announced in Albert Hanson Lumber Co. v. Angelloz, 118 La. 862, 43 South. 529, to the effect that a deed describing a different tract of land from the one in controversy is not translative of the land in controversy; and, if'the description be subject to correction, the deed does not become translative of property until the correction is made according to law. In Bonvillain v. Bodenheimer, 117 La. 793, 42 South. 273, this court held that a latent misdescription in a deed forming a link in a chain of title cannot be corrected, where the vendor in such conveyance has not been made a party to the suit. We cannot see how the alleged misdescription in the Auditor’s deed can be corrected in any suit to which the state is not a party. Under the theory of plaintiff’s case the state acquired a good title to the property in 1885, and conveyed the same to them in 1908.
It is therefore ordered that the judgment of the Court of Appeal in this case be annulled, avoided, and reversed, and that the judgment of the district court be affirmed; costs of appeal to be paid by the appellants.