(110 So. 828)

No. 28186.

### STOCKBRIDGE v. MARTIN et al.

### In re MARTIN et al.

(Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

On Motion to Dismiss.

1. **Appeal and error ⬧627(2)—Supreme Court will dismiss appeal if transcript has not been filed within time provided, no extension having been applied for or granted.**

Supreme Court will dismiss appeal, when transcript has not been filed within time provid-

ed and no extension has been applied for nor granted.

2. **Appeal and error ⬧627(1)—Supreme Court rule that failure to file transcript in time constitutes abandonment of appeal held not applicable to appeals from district court to Court of Appeal (Const. 1921, art. 7, § 27).**

Supreme Court rule that appeal is abandoned by failure of appellant to file transcript in time *held* not applicable in Court of Appeal, notwithstanding Const. 1921, art. 7, § 27, providing that rules regulating appeals be applied to Court of Appeal as far as applicable, such court having provided method of record preparation by district court clerk, directing him to send original records to be filed with Court of Appeal by return day.

3. **Appeal and error ⬧628(2)—District court clerk's failure for two years to transmit transcript to Court of Appeal, after appellant's direction made within return day, held not cause for dismissal of appeal.**

Where appellant in tax sale annulment suit directed district court clerk to transmit transcript to Court of Appeal within return day, clerk's omission to so transmit for two years *held* not ascribable to appellant to cause appeal's dismissal, appellant having no legal remedy to force clerk to transmit record before expiration of return day.

### On the Merits.

4. **Taxation ⬧788(1)—Tax deed to land involved in tax annulment suit held prima facie valid, being supported by proper tax assessment and sale thereunder.**

Where corrected record in tax sale annulment suit showed property's assessment for village taxes in name of one of former owners, and that sale took place thereunder, tax deed was prima facie valid and full proof of facts recited therein.

5. **Taxation ⬧656—Sale of land held by village for former tax assessment delinquency within year after such delinquency held valid, statute governing sale being directory (Act No. 170 of 1898, as amended by Act No. 315 of 1910).**

Tax sale within year after municipality received land for nonpayment of tax assessment *held* valid, not being in violation of Act No. 170 of 1898, as amended by Act No. 315 of 1910, prohibiting sale for delinquent taxes while title arising out of former assessment delinquency exists in village, assessment under which sold having been levied before village received prop-

erty, statute governing sale being directory, not mandatory.

6. **Judgment** ⬡⟹682(1)—**Judgment quieting tax title held effective against grantee of record owner in tax sale annulment suit, though not made party in that suit (Act No. 101 of 1898; Const. 1921, art. 10, § 11).**

Act No. 101 of 1898, and Const. 1921, art. 10, § 11, governing proceedings to quiet tax titles, not requiring joining of every person having color of title, plaintiff in tax sale annulment suit *held* affected by proceedings to quiet tax title though not made party therein, there being assessment and sale thereunder in name of party appearing as landowner with deed from same author from whom plaintiff claimed title, antedating his claim, and former proprietor being cited through curator ad hoc.

Brunot, J., dissenting.

Suit by M. C. Stockbridge against John W. Martin and others to annul two tax sales. Judgment of the district court adverse to plaintiff was reversed by the Court of Appeal, and defendants bring certiorari. Judgment of Court of Appeal annulled and set aside, and that of the district court reinstated and affirmed.

Wilkinson, Lewis & Wilkinson, and W. H. Scheen, all of Shreveport, for applicants.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for respondent.

### On Motion to Dismiss.

THOMPSON, J. This is a suit to annul two tax sales made by the village of South Highland through its treasurer and tax collector. The property is situated in the village, and the taxes were levied under an assessment made by the village authorities in the name of Justin P. O'Neal, for the years 1918 and 1919.

The first sale for the taxes of 1918 was made on September 9, 1919, and the deed was recorded October 6, 1919.

At this sale the property was adjudicated to the village in default of any other bidders.

The second sale was made to the defendant Martin on July 30, 1920, for the taxes assessed against the owner, O'Neal, for the year 1919. This sale was recorded September 18, 1920.

On the day of his purchase at the tax sale, Martin redeemed the property from the tax adjudication to the village.

On a trial of the case, judgment was rendered rejecting the plaintiff's demand, but on appeal that judgment was reversed by the Court of Appeal and the tax sales were annulled.

When the case was called for the first time in the Court of Appeal, a motion was filed by the appellee to dismiss the appeal for the reason that the record was not filed in the Court of Appeal until long after the return day as fixed in the order of appeal. The motion was overruled, and that ruling is made one of the assignments of error in defendant's application for review.

The judgment of the district court was signed on July 28, 1923. The order of appeal was signed August 23, 1923, the appeal bond was filed two days later, and the record was indorsed by the clerk of the Court of Appeal on September 8, 1925, filed as of August 25, 1923. The appeal was returnable on the fourth Monday of September, 1923.

It appears from statements in brief of counsel on both sides that the clerk of the district court (whose deputy at that time served as clerk of the Court of Appeal) kept a book on which was entered the cases on appeal as soon as the bond had been filed, but the records were not actually filed in the Court of Appeal until the calendar for the session of court at which the case was to be tried was made up. That was the course pursued in this case and accounts for the long delay in filing the record in the Court of Appeal.

If the date of the actual indorsement on the record (September 8, 1925) is to be accepted as the date of filing the record in the

Court of Appeal, instead of August 25, 1923, when the case was entered by the clerk in the book kept by him showing cases appealed to the Court of Appeal, and if the failure of the clerk to file the record in proper time is to be imputed to the appellant, then it is very clear that the record was filed too late and the appeal would be regarded as having been abandoned.

[1] It has been the uniform ruling of this court, in cases appealed to this court, to dismiss the appeal when the transcript has not been filed within the delay provided, and no extension has been applied for nor granted by this court.

Article 7, § 27, Constitution of 1921, provides that the rules of practice regulating appeals and proceedings in the Supreme Court shall apply to appeals and proceedings in the Courts of Appeal so far as they may be applicable, and it further provided that all cases on appeal to the Courts of Appeal shall be tried on the original records, pleadings, and evidence.

The Court of Appeal of the Second circuit adopted a rule providing the method of preparing the records by the clerks of the district court and directed that such original records, as made up, should be sent to the Court of Appeal, by the clerk of the district court, in time to be filed in that court on or before the return day.

[2] Under the above rule and the provision requiring cases to be tried on the original record as made up in the trial court, it is manifest that the rule which prevails in the Supreme Court with regard to the abandonment of appeal by failure of the appellant to file the transcript in time is not applicable and should not be enforced against an appellant in an appeal to the Court of Appeal, where the clerk of the court fails to transmit the record to the Court of Appeal on or before the return day.

In appeals to the Supreme Court, the appellant has control over the transcript. The transcript is made up at his request and is paid for by him, and it is his duty to see that such transcript is filed in this court within the legal delay.

If he fails to do so, the presumption is conclusive against him that he has abandoned his appeal.

This cannot be true with respect to appeals to the Court of Appeal. The appellant has no control over the record.

[3] That record is a part of the archives of the court and is under the control of the clerk until delivered to the clerk of the Court of Appeal. The duty of filing the record with the Court of Appeal is imposed upon the clerk of the district court and not upon the appellant, and the failure of the clerk to perform that duty cannot be imputed to the appellant.

The appellant in this case did everything that was expected or required of him in the perfection of his appeal. He could not know in advance that the clerk would not transmit the record before the expiration of the return day, and hence was without a legal remedy to force the clerk to perform the duty required of him in transmitting the record to the appellate court.

To apply the rule of this court to the Courts of Appeal would be to penalize an appellant by the loss of his appeal for the omission and neglect of the clerk of court, for which the appellant was not responsible and over which he had no control.

The motion to dismiss was properly overruled.

### On the Merits.

The property in controversy was sold by J. D. Wilkinson et al. to Justin P. O'Neal on November 12, 1907, and the same parties sold the same property to M. C. Stockbridge on May 27, 1909.

The two deeds were recorded in the order of their execution.

The property was assessed to Stockbridge upon the state and parish assessment rolls for the years 1918 and 1919, and he paid the state and parish taxes under the said assessments.

The property was not assessed to Stockbridge on the assessment rolls of the village of South Highland for the years 1918 and 1919.

It was assessed, however, for the years 1918 and 1919 on the assessment rolls of the village, in the name of O'Neal, the first purchaser from Wilkinson et al.

The taxes not having been paid to the village for 1918 by O'Neal or by any one else, the property was offered for sale for said taxes, and, no one bidding on same, it was sold to the village.

The village again caused the property to be assessed to O'Neal for the year 1919, and, the taxes not having been paid, the property was again offered for sale and adjudicated to the defendant Martin. On the day of this last sale, Martin redeemed the property from the village under the sale made for the taxes of 1918.

After the time for redemption of this last sale had expired, Martin filed a suit against O'Neal, who was an absentee, service being made on a curator ad hoc, to confirm his tax deed, under the provisions of Act 101 of 1898. The suit just referred to was filed in March 8, 1922, and judgment was rendered confirming the tax sale on December 9, 1922. In that judgment, it was ordered and decreed:

"That the tax title, dated July 30, 1920, as recorded in Book 123, page 708, of the Conveyance Records of Caddo parish, to lot 5 of block 7 of the Fairfield Heights subdivision, having been assessed to Justin O'Neal for the taxes for 1919, be and the same is hereby confirmed and made absolute and the plaintiff J. W. Martin decreed the owner thereof by virtue of said tax title."

A writ of possession was issued on said judgment, and Martin was placed in possession of the property by the sheriff.

In the present suit to annul the tax title of Martin, it is alleged that the adjudication to the village for the taxes of 1918 was null and void for the reason that the property had been assessed by the parish assessor for state and parish taxes in the name of Stockbridge, and that the law required the assessment by a municipality to be made by copying the parish assessment roll, which was not done by the village, in this instance.

That the sale for the taxes of 1919 was null and void, being in violation of Act 136 of 1898, Act 170 of 1898, and Act 228 of 1910, which prohibit the sale for taxes by a municipality of property which had been adjudicated to it for taxes within one year from the date of such adjudication, and, further, that both sales were null for the reason that no notice was given to delinquent taxpayers, and no advertisement of the tax sale was published in the municipality, as required by law.

The defendant Martin and Mrs. W. S. Wilkinson to whom Martin had sold the property, in defense, alleged that the plaintiff, having purchased the property after the sale by his vendors to O'Neal, had no interest in attacking the tax sale made under an assessment in the name of O'Neal.

They further affirmed the validity of the tax title and pleaded the constitutional limitation in bar of any attack on the tax title.

Having reached a different conclusion from that of the Court of Appeal as to the validity of the tax sale, the application of the curative provisions of the Constitution, and the effect of Act 101 of 1898, we find it unnecessary to consider the lack of interest of the plaintiff to institute this suit because of an outstanding title to the property antedating the plaintiff's title.

The Court of Appeal predicated its decree annulling the tax sale on the assumption that there was no tax sale at all, for the reason that there was no assessment by the village of South Highland, that the sale was

made for taxes assessed against O'Neal on the parish assessment roll, and that the sale was made at the parish courthouse outside of the village limits in which the property was situated.

And, further, that the sale was made in violation of a prohibitory law which provides that there can be no subsequent sale for taxes of property which had been previously adjudicated to the village at a tax sale.

[4] The Court of Appeal was led into error in stating that there had been no assessment made of the property by the village, and that the tax sale was made at the parish courthouse under an advertisement that the sale would be made at that place, by an erroneous copy of the tax deed filed in the record by the clerk, which recited those facts.

The truth of the matter is that there was an assessment by the village against O'Neal, the recorded owner, there was an advertisement in the official journal of the parish, and the sale was made by the village tax collector at the door of the municipal building. These facts are recited in a corrected copy of the tax deed.

The plaintiff's counsel in their brief concede that the first copy of the tax deed placed in the record was erroneous in the matters stated, and that a corrected copy was filed in the Court of Appeal.

It thus appears that there was an assessment of the property for village taxes in the name of O'Neal, and there was a tax sale under that assessment. This deed is therefore to be accepted as prima facie valid and as full proof of the facts therein recited, in the absence of any proof to the contrary.

It is stated in brief of plaintiff's counsel that the validity of the adjudication to the village for the taxes of 1918 is of no particular importance in the decision of this case

162 LA.—20

further than to shed light on the subsequent tax sale to Martin for the taxes of 1919.

[5] This brings us therefore to the real ground of attack on this latter title, and that is that it was made at a time when the inchoate title was vested in the village and before the redemption period had expired, which, as contended, was in violation of Act 170 of 1898, as amended by Act 315 of 1910, which prohibit a sale under an assessment for delinquent taxes or the collection of taxes while the title to the property remains in that situation.

It is true that the sale for the taxes of 1919 was made after the sale to the village for the taxes of 1918, but it does not appear that the assessment for 1919 was made after that adjudication. It is fair to presume that the assessment of 1919 was made before the adjudication for the taxes of 1918. The sale for the taxes of 1918 was made September 9, 1919, and the listing and assessment for 1919 was required and must be presumed to have been made prior to the adjudication to the village. But, however that may be, it is a fact that no effort was made by any one to redeem the property from the adjudication to the village within one year after that adjudication, except the redemption by the purchaser at the tax sale for the taxes of 1919.

In the case of Gamet's Estate v. Linder, 159 La. 666, 106 So. 25, the validity of a tax sale made by the city of New Orleans of property which had been previously adjudicated to the state and not redeemed within the year was at issue. The property had been adjudicated to the state for taxes due the state for the year 1894 under an assessment to Gamet, the adjudication having been made on July 6, 1895. On November 30, 1906, more than ten years after the adjudication to the state, the city of New Orleans sold the property to Linder for the city taxes of 1904. Thereafter, in 1908,

Linder redeemed the property from the state in the name of Gamet.

It was contended on behalf of Gamet's heirs that the sale by the city was an absolute nullity because the property had been previously adjudicated to the state, and that Linder was not entitled to redeem the property, and such redemption inured to the benefit of the Gamet heirs.

The contention was not sustained and the validity of the tax title to Linder was recognized.

In the course of the opinion, this court said:

"In Neal v. Pitre, cited supra [142 La. 738, 77 So. 582], both sales, the one to the state and the other to defendant's author, appear to have been made in satisfaction of state taxes. The court held the second sale to be invalid upon the theory that the only method by which property adjudicated to the state could be sold was under the provisions of section 61 of Act 170 of 1898. This was clearly erroneous, since the provision of the statute relied on to support the announced rule is not mandatory. It merely provides that the tax collector 'may sell the same' (the adjudicated property) 'after the expiration of twelve months, under Act 80 of 1888, as the property of the state.' * * * The remedy is not exclusive, because, as we have heretofore seen, the property may be redeemed at any time before said sale by the owner or by any other interested party."

We see no reason why the same rule should not be applied in the present case. If a municipality can sell property, in the enforcement of its taxes, which had been previously adjudicated to the state, its creator, and which had not been redeemed but was still subject to redemption, there can be no good reason advanced why such municipality may not sell property, which had been previously adjudicated to it, to satisfy a tax due it and which had been assessed before such adjudication and while the title to the property remained in the tax debtor.

If the law which prohibits a sale by the state for taxes assessed after an adjudication of the property to the state, and the law which provides how such property may be disposed of by the state, are merely directory and not mandatory, when applied to a sale made by a municipality of property previously adjudicated to the state, then, by the same reasoning, it must be held that such statutes are directory and not mandatory, when applied to a sale by such municipality of property adjudicated to that municipality.

It may be proper to observe that the state in the Gamet Case was not a party to the suit. The state had received all the taxes due it on the property when it permitted Linder to redeem the property from the state adjudication some two years after he had purchased at the city tax sale.

So, in the instant case, the village of South Highland is not a party to the suit. The village permitted the purchaser to redeem the property from the prior adjudication and thereby received all taxes due on the property.

In view of the construction placed on the statutes referred to in the Gamet Case, which is the latest expression of this court on the question at issue, it follows that the tax sale sought to be set aside herein was not radically null as being made in violation of a prohibitory law, and the purchaser is protected by the constitutional limitations.

[6] Act 101 of 1898 provides the manner of notice and form of proceedings to quiet tax titles, in accordance with article 233 of the Constitution then in force (article 10, § 11, Constitution of 1921) after the lapse of twelve months from the date of record of the tax title.

The suit is to be brought against the former proprietor of the property, and, if such former proprietor be a nonresident of the state or be unknown, then a curator ad hoc shall be appointed by the court to represent such unknown or absent owner.

The provisions of the statute were complied with by the purchaser at the tax sale

and, as already stated, the judgment quieting the tax title was rendered more than six months after the notice of the proceedings instituted.

It is contended that the plaintiff was not affected by the judgment so rendered because he was not a party to that proceeding and had no notice of such proceeding.

The statute does not provide nor did it contemplate that every person having some color of title to the property or some supposed right thereto should be notified and brought into the proceeding to quiet the tax title. The statute merely requires that the suit may be instituted by petition and citation, as in ordinary actions against the former proprietor or proprietors of the property, and this could only mean the former owner as disclosed by the record and assessment.

There is no provision in the statute for notice to third persons by advertisement or otherwise.

In the case of Roussel v. Railways Realty Co., 132 La. 379, 61 So. 409, 833, it was held on the original hearing that a judgment quieting a tax title, as provided in Act No. 101 of 1898, is one in personam against the former proprietors who have been cited, and, where they are unknown and are represented by a curator ad hoc, such judgment has no legal effect beyond the confirmation of the tax sale as made.

On rehearing, however, the former judgment of this court was set aside, and the court quoted with approval the following from Judge St. Paul, then of the Court of Appeal.

"But we held, and we still hold, that the correctness, as distinguished from the validity, of a judgment of confirmation, obtained contradictorily with the true owner of the property, is not open to investigation by any third person whomsoever."

In the instant case, there was an assessment and there was a tax sale in the name of the party appearing as owner upon the public records with a deed from the same author from whom the plaintiff claims to have obtained a title and which antedated the plaintiff's title, both as to execution and registry.

That former proprietor was cited through a curator ad hoc, and all of the proceedings leading up to and including the judgment of confirmation were regular and legal in form. In this situation we think that judgment entitled to full force and effect as against the attack of the plaintiff and the tax sale which the judgment confirms falls within the curative provisions of the Constitution.

The judgment of the Court of Appeal is annulled and set aside and that of the district court is reinstated and affirmed at the costs of the plaintiff.

O'NIELL, C. J., concurs on the ground that the plaintiff had no right of action to question the validity of the tax title.

ST. PAUL, J., concurs in the decree.

BRUNOT, J., dissents.