## DORFER v. CITY OF NATCHITOCHES
### et al.*
### No. 4878.

Court of Appeal of Louisiana.
Second Circuit.
May 2, 1935.

Stephens & Gahagan, of Natchitoches, and E. W. & P. N. Browne, of Shreveport, for appellants.

W. Peyton Cunningham, of Natchitoches, for appellee.

MILLS, Judge.

On February 24, 1932, Herbert Dorfer, employed by the city of Natchitoches, in the Water and Light Department, while at work in the city's power house, received an accidental injury to the index finger of his right hand. The finger healed in such a position that the usefulness of the entire hand was affected, but it appeared that surgical treatment or amputation would limit the disability to the finger.

Accordingly, on June 24, 1932, with the approval of the court, he entered into a compromise lump-sum agreement whereby he was paid and received $468 for the loss of the use of the finger, and an additional sum of $110 to pay for the future surgical attention or amputation. Retaining these sums, and without submitting to the amputation, on December 16, 1932, plaintiff brought this action asking that the lump-sum settlement or compromise be set aside, alleging, first, that it was not a compromise, but a discount of what was properly due him of more than eight per cent.; and, in an amended petition, that he was imposed upon in the settlement. He claims, in the present action, compensation for the loss of a hand, less the amounts paid, which, after due trial, was allowed by judgment rendered November 25, 1935.

*Rehearing denied June 4, 1935.

From this judgment defendants, city of Natchitoches and its insurer, the Maryland Casualty Company, were granted orders of suspensive and devolutive appeal, returnable January 15, 1934. The record was first lodged in this court and filed on March 1, 1935, no extension of the return day having been requested. On April 3, 1934, appellants moved in this court to advance the case on the docket. They were then officially informed by the clerk of the appellate court that the record had never been presented here. On April 20, 1934, they deposited the required filing fee of $5. On May 3, 1934, a duplicate or new appeal bond, dated December 1, 1933, was filed in the lower court and is the only bond appearing in the record; defendants contending that the original had been filed December 2, 1933, and the clerk contending that no bond had been previously filed. Thereafter, appellants took no formal action until February 22, 1935, when they obtained here an alternative writ of mandamus ordering the record up. It was filed March 1, 1935, before the return day of the rule in the mandamus proceeding.

Plaintiff, appellee, has moved to dismiss the appeal upon the following grounds:

1. Filing fee not paid until more than three months after return day.

2. Record not lodged in Court of Appeal until more than thirteen months after return day.

3. Delay imputable to fault of appellant because even after bond filed on May 3, 1934, record, with their knowledge, was not filed in Court of Appeal until March 1, 1935, without any application for extension.

4. Bond filed May 3, 1934, more than 60 days after return day without extension thereof, too late to perfect either a devolutive or suspensive appeal.

It is necessary to determine first whether or not the appeal should be dismissed because of the failure to file the deposit for costs until after the return day.

Rule 3 of this court provides:

"No case will be filed by the Clerk until after a deposit of $5.00 has been made."

The right of this court to adopt and enforce such a rule is not questioned.

We have dismissed the appeals in Nelms v. Hankins Bros., 5 La. App. 733; Johnson v. Oil City Bank, 14 La. App. 698, 130 So. 854; and Danna v. Yazoo & Miss. V. Ry. Co., 154 So. 365, where the record was lodged in this court before the expiration of the return day, but the filing fee was not paid until after that period for the reason that, though physically in this court before the return day, under the provisions of rule 3 the record was not legally filed until after its expiration. Under the well-recognized rule, the appeals were dismissed because the records were filed too late, due to the fault of the appellant in not making the deposit.

We can find no case where an appeal has been dismissed for failure to make the deposit where that fee has been paid before the record is tendered for filing. In the present case, the deposit was made April 20, 1934, more than ten months before the record reached this court on March 1, 1935.

[1] In the case of Stockbridge v. Martin, 162 La. 601, 602, 110 So. 828, 829, it is held that in appeals to this court, the failure to file the record on time is prima facie the fault of the clerk of the district court and not imputable to the appellant. The rule is different in the Supreme Court, and other circuits of this court (Wiggins v. Texas & N. O. R. Co., 17 La. App. 31, 135 So. 265), where it is the duty of appellant to see that the appeal is timely filed; the penalty for failure being dismissal.

"This cannot be true with respect to appeals to the Court of Appeal. The appellant has no control over the record. That record is a part of the archives of the court and is under the control of the clerk until delivered to the clerk of the Court of Appeal. The duty of filing the record with the Court of Appeal is imposed upon the clerk of the district court and not upon the appellant, and the failure of the clerk to perform that duty cannot be imputed to the appellant. The appellant in this case did everything that was expected or required of him in the perfection of his appeal. He could not know in advance that the clerk would not transmit the record before the expiration of the return day, and hence was without a legal remedy to force the clerk to perform the duty required of him in transmitting the record to the appellate court. To apply the rule of this court to the Courts of Appeal would be to penalize an appellant by the loss of his appeal for the omission and neglect of the clerk of court, for which the appellant was not responsible and over which he had no control." Morehouse Lumber & Bldg. Material Co. v. Jacob & Walker, 17 La. App. 409, 136 So. 106; Dupuy v. Phillips, 14 La. App. 696, 130 So. 855; Devereaux & Ashby v. Rochester, 10 La. App. 430, 120 So. 658; Carter v. Bolden, 11 La. App. 655, 124 So. 562.

The effect of these decisions is that, where the clerk alone is at fault, the return day is automatically extended until he lodges the record in the Court of Appeal.

■ Therefore, when the record reached here on March 1, 1935, the deposit for costs having been previously made on April 20, 1934, before it was legally filable, the appeal should not be dismissed unless fault on the part of appellant was in some way responsible for the delay.

■ The right of appeal is a constitutional right which should not be forfeited except in clear and undisputable cases. Appeals are favored under the law. A rule, the violation of which results in the dismissal of an appeal, is highly penal and should be strictly construed. Rules of court should be plain and unequivocal. Their requirements should be clear and their meaning derived from the wording of the rule, without the necessity of resort to jurisprudence.

■ Our rule 3 does not say that the deposit must be made before the expiration of the return day. It merely provides that no case will be filed until it has been made. It is only where the failure to make the deposit delays the filing of the record beyond the fixed or automatic return day that the appeal will be dismissed.

The next ground urged is based upon the delay in filing the record.

■ Under the Stockbridge decision, the appeal cannot be dismissed because of the delay unless the tardiness is shown to have been, in some way, the fault of the appellant. In that case, though the record was not filed until more than two years after the return day, it is not indicated that appellant had notice of, or was in any way to blame for, the failure.

■ To decide this issue involves an examination of the record. It discloses that plaintiff, on February 27, 1935, before the record was lodged here, secured, in the district court, an order commanding defendants to show cause why the suspensive appeal should not be decreed null and ineffective because of the failure to file a suspensive appeal bond within ten days, and why the judgment should not be declared exigible.

On March 9, 1935, the record in the meantime having reached the Court of Appeal, defendants filed in the district court pleas of prematurity and to the jurisdiction. On the same day the city of Natchitoches answered that it, under the provisions of Act No. 173 of 1902, is not required to give an appeal bond and that as to it the appeal is unquestionably valid.

The Maryland Casualty Company answered that it had filed a timely and proper bond with the district clerk on December 2, 1933, and a duplicate thereof on May 3, 1934; that it did not learn until notified by the appellate court, on April 3, 1934, that the appeal had not been forwarded because of the alleged failure to file the bond; that a duplicate was filed May 3, 1934; and that the district clerk, though repeatedly demanded, did not file the record in the Court of Appeal until March 1, 1935, after an alternative writ of mandamus had issued out of the appellate court on February 22, 1935. It asserted that the exemption of the city of Natchitoches from giving bond extended to its insurer; that neither defendant was at fault in delaying the filing of the appeal.

It appears, then, that both defendants were, on April 3, 1934, actually and officially notified of the fact that the record had not been filed in the appellate court. Granting that up to this time they were without fault, did they continue blameless for the more than ten months elapsing before they applied for a mandamus ordering the clerk to forward the record? Should they not, when they learned of the delay, have promptly informed this court of the situation and requested either that the record be ordered up or the return day extended? Can an appellant, officially notified of the failure of a district court clerk to forward a record, sit supinely by, making no official complaint, without himself becoming negligent and at fault?

It seems to us that these questions must be answered adversely to both defendants. Though relieved from giving bond, freedom from fault in delaying the appeal was as essential to the city as to its insurer. In the Stockbridge case the appeal was not dismissed because it appeared the appellant had done all he could do. In the present case, as soon as notified on April 3, 1934, they could have applied for an extension of the return day, and if not then, certainly after May 3, 1934, when the bond was filed, they could have mandamused the clerk as effectively as ten months later.

In the Supreme Court and the other circuits of this court, where it is the duty of appellants to file the record, it is well settled that a motion to dismiss will be sustained where it is lodged in the appellate court after the expiration of the return day and

days of grace, without an extension having been obtained.

In this court, where it is the duty of the clerk to forward the record, it would seem, under the ruling in the Stockbridge case, that the appeal can only be dismissed on the above ground where an affirmative showing is made of fault on the part of appellant.

In Patterson v. Johnson, 7 La. App. 116, heard in this circuit, an appeal, remanded for completion within thirty days, was dismissed where no action was taken within that time and no request made for an extension.

In Bentley v. Barrett (La. App.) 144 So. 187, also in this circuit, it is held that it is the duty of appellant to be fully cognizant at all times of the exact status of his case and, where needed, to make timely application for an extension of the return day.

In Raphiel Co. v. Hollingsworth, 19 La. App. 19, 139 So. 509, this court denied appellant's motion to remand and dismissed the appeal where note of evidence was missing through his failure to pay the reporter.

In Weber v. Kemp (La. App.) 148 So. 279, 280, in the First Circuit, it is held:

"It is the duty of the appellant to see that the record is filed in this court within the time fixed for the return day of the appeal, and, when for some reason beyond his control he is prevented from doing so, it is his further duty, if he cares to preserve his appeal, to apply for an extension of time, supporting his motion therefor by proper affidavit."

True, this case arises in a jurisdiction where the appellant must file the record, but the reasoning applies equally in ours after the delay becomes known to the appellant.

In Taylor v. Kelly-Weber & Co., 15 La. App. 302, 131 So. 306, 307, the same court says:

"Appellant alleges in his petition that at the time of obtaining the transcript, the testimony had not been reduced to writing and filed in the record; that he had on numerous occasions requested the court stenographer to file the testimony in the record, and on each occasion had been promised that the testimony would be filed in the record, etc. It is plain that the situation was well known to appellant at the time he brought up the appeal beyond and in addition to the declaration of the clerk of court in certifying to the transcript. And he could by timely petition to this court or to either of the members composing the same, and upon making the proper showing, have obtained further time in which to procure the testimony adduced on the trial and complete the transcript."

On the trial of the rule to declare the judgment exigible, counsel for the city testified positively that he filed the appeal bond with the chief deputy clerk on December 2, 1933, well within the ten days. The court official is equally positive that he did not. The conflict is not relieved by the good faith that each concedes the other. The attorney testifies that the original bond was mailed to him out of the office of the Maryland Casualty Company on December 1, 1933. No official of the insurance company appears as a witness. The bond filed May 3, 1934, is not a duplicate, but is a new bond made up by the attorney in Shreveport. He admits that when he filed the new bond in May, he asked the clerk to say nothing about the matter, and had previously written the attorneys for the Casualty Company that it might be possible to substitute the new bond without opposing counsel discovering the situation.

Counsel for the insurer testifies that he made up the new bond in May to conform as nearly as possible to the original; that the attorney for the city wrote him on December 8th that the original bond had been filed; that the court reporter's fee was not paid in full until July 20, 1934.

The clerk testifies that he had put the record aside awaiting the filing of the bond; that no bond was filed until May 3, 1934; that when it was tendered no request was made that it be filed as of date December 2, 1933; that all he was asked was to put it in the record and keep his mouth shut, which he did. He admits that the delay from that time on was due to his procrastination. That he has never failed to file a record on time or lost an appeal bond, but that other papers have been lost from his office. That in the present case the transcript was not paid for until July, 1934. That he appreciates the importance of an appeal bond. That when tendered, he stamps and files them immediately.

The recollection of the clerk is fortified by the indisputable fact that the missing bond is not in the record and the presumption of regularity that attaches to the conduct of officials. While we recognize the well-established rule that greater weight is attached to positive than negative testimony, we do not think it controlling here. Appellants' case would be stronger had counsel demand-

ed that the new bond be filed as of date of the alleged filing of the original, and to have enforced his demand by an appropriate rule.

We agree with the trial judge that the record fails to sustain appellants' contention that the appeal bond was originally filed December 2, 1934. The failure to timely file the appeal bond and to pay for the testimony until long after the return day is a further fault on the part of appellants which fatally delayed the filing of the record.

For the reasons assigned above, the appeal is dismissed as to both appellants.