### WOODWARD v. BLAIR et al.

### No. 2140.

Court of Appeal of Louisiana. First Circuit.

Oct. 3, 1940.

Argued before LE BLANC and OTT, JJ., and W. S. ROWND, Judge ad hoc.

Ellis & Bostick, of Amite, for appellant.

E. V. Parham, of New Orleans, for appellee.

W. S. ROWND, Judge ad hoc.

This is a suit for compensation under the Workmen's Compensation Law of Louisiana, Act No. 20 of 1914, and its amendments. The plaintiff was employed by A. Farnell Blair, contractor, who was engaged at the time doing some construction work on the Jail House of the Parish of Tangipahoa. He is a carpenter by trade, and on March 23, 1938, while engaged regularly in the scope and course of his employment, fell some twenty-two feet, as a result of which he fractured his left wrist and injured his back in the region of the sacro-iliac joint. He was receiving wages at the sum of 65¢ per hour, or $5.20 per day, and alleges that

the working week consisted of six days, and therefore his weekly wages were $31.20. On that basis, at the rate of 65% of his weekly wage which he is entitled to receive as compensation under the Statute, he would obtain a maximum of $20 per week.

Plaintiff alleges in his petition that he received some payments covering his claim of disability, but that the last payment so received by him was for the period from June 16 to June 22, 1938. He alleges total permanent disability and prays for judgment against his employer and its compensation insurance carrier, Liberty Mutual Insurance Company, in solido, in the full sum of $8,000 plus $250 for medical expenses, less a credit for whatever amount has been paid.

For answer, the defendants admit plaintiff's employment, and that he sustained the injuries alleged by him, but aver, upon information and belief, that at the time the answer was filed, to-wit: October 10, 1938, he had recovered from such injuries. They admit that he was receiving the wages of 65¢ per hour, or $5.20 per day, but aver that he was limited to forty hours work per week, divided into five days of eight hours each, and aver further that on that·basis they paid him such compensation as was due him until he had recovered, at the rate of $16.90 per week. They aver moreover that they paid all necessary medical and contingent expenses required by the Statute, and that when they ceased making any further payments on June 22, 1938, it was because they had been informed and believed that he had fully recovered from his injuries.

On the issues as thus made the case went to trial and resulted in a judgment in the district court in favor of plaintiff, awarding plaintiff compensation at the rate of $16.90 per week for a period not however beyond three hundred weeks, subject to a credit for whatever payments had been made. The judgment also decreed that defendants pay all medical and contingent expenses up to the amount of $250, less a credit of the amount already paid, and also taxed as costs the sum of $25, expert witness fees each to Dr. A. L. Lewis and Dr. Jessie H. McClendon.

The judgment as rendered was read and signed in open court on October 27, 1938. On October 18, 1939, counsel for plaintiff filed a petition for an order of devolutive appeal to this court, and asked that the return day therefor be fixed, and an appeal bond be ordered furnished. The district judge granted the order, making the appeal returnable on or before November 15, 1939, conditioned upon the plaintiff furnishing bond in the sum of $100. The defendants, through their counsel, accepted service of the petition and order, and on November 2, 1939, the plaintiff furnished the appeal bond required by the order of the district judge.

As the filing mark of the Clerk of this Court on the transcript of appeal showed that it was not filed until January 22, 1940, or more than two months after the return day as fixed in the order of appeal, and it appearing that there had been no order granting an extension of time for the filing of the transcript or record, counsel for appellees filed in this court a motion to dismiss the appeal.

Inasmuch as there does not seem to be much dispute on the merits of the case, except on the point relating to the period of compensation, that is, whether it should be for three hundred weeks, as fixed in the judgment appealed from, or four hundred weeks, as contended for by counsel for plaintiff, the motion to dismiss the appeal is the most serious matter that confronts this court for decision. The issue which it raises presents a rather complicated question, in view of the decisions of the various courts, and one which has heretofore not been free from doubt by any means. Our investigation of the matter leads us to the conclusion that the motion should be dismissed and the appeal heard. We have reached this conclusion because of certain decisions of this court, and, more particularly, because of the decision of the Supreme Court in the case of Stockbridge v. Martin, 162 La. 601, 602, 110 So. 828.

The whole question revolves on the point as to whose duty it is to see that the transcript of appeal is timely and properly lodged in the Appellate Court. Is it the duty of the appellant, or that of the Clerk of the District Court from which the appeal was sent up? Under Article 587 of the Code of Practice, it is made mandatory upon the appellant to file the transcript in the Appellate Court on or before the return day, and under Article 883 that duty is clearly imposed on him, as it is therein provided that if he, the appellant, has not filed the record in the Supreme Court on the day fixed for the return of the appeal he may obtain an extension of time in the manner pointed out in that Article. Particularly under the provisions of this last Article it may be said that the appellant is the one who is guiding the whole proceeding relative to having the

transcript prepared and filed, and he is the one who has to be on the lookout to see that it is filed in time, and if not to provide the Clerk with additional time in which to do so. Article 884 prescribed the penalty, if it may be referred to as such, which the appellant suffers if he has not obtained the extension of time, and has not filed the record in the Supreme Court on the return day. These Articles of the Code of Practice refer, however, to appeals to the Supreme Court.

The Supreme Court of the State has significantly observed the provisions of those Articles of the Code of Practice by incorporating them in their own rules, one to the effect that it is the appellant's duty to see that the transcript is filed in time, in order to avoid a dismissal of the appeal. From the very early days will be found decisions too numerous to mention to the effect that such duty is imposed on the appellant, and invariably the appeal has been dismissed when it is shown that appellant failed in his performance. See Maurer v. Haefner, 192 La. 929, 189 So. 579.

Prior to the decision by this Court in the case of Vinyard v. Stassi, 152 So. 161, this Court had always followed the ruling of the Supreme Court and held the appellant to the duty of filing the transcript of appeal in time. In Opelousas-St. Landry Bank v. Fontenot, 1 La.App. 195, this Court stated that: "The rules of practice regulating appeals to and proceedings in the Supreme Court shall apply to appeals and proceedings in the Court of Appeal, so far as they may be applicable until otherwise provided. Constitution 1921, Sec. 27 of Art. 7." The Court then added that it was settled jurisprudence that a transcript of appeal must be filed on or before the return day, under penalty of dismissal. That decision was handed down December 30, 1924, and rehearing refused February 18, 1925. There were several decisions following that one which we find it unnecessary to refer to, because they are more or less of the same import.

In 1926, the Supreme Court had before it on certiorari the case of Stockbridge v. Martin, to which we have already referred. It was this case which started the confusion regarding the question of whose duty it was to file the transcript in the Appellate Court in proper time. The Court made a distinction between the bringing up of the transcript in the Supreme Court and in the Court of Appeal. It stated that in the Supreme Court the appellant has control over the transcript; that it is made up at his re-

quest, and paid for by him, and that "it is his duty to see that such transcript is filed * * within the legal delay." [162 La. 601, 110 So. 829.] If he fails in his duty, the Court stated further, the presumption is conclusive against him that he has abandoned the appeal. The Court then went on to show that this was not true with respect to appeals in the Courts of Appeal, where, it said, the appellant had no control over the record. With regard to that record, it is stated, it is a part of the archives of the Court and is under the control of the Clerk of that Court until delivered to the Clerk of the Court of Appeal. "The duty of filing the record with the Court of Appeal" the Court stated, "is imposed upon the clerk of the district court and not upon the appellant, and the failure of the clerk to perform that duty cannot be imputed to the appellant." It was then stated clearly that when the appellant has done all that is expected, or required, of him to perfect his appeal, if the Clerk has been derelict in his duty in getting the transcript ready and filing it in time, the appellant will not be penalized by the loss of his appeal.

In Vinyard v. Stassi, supra, Judge Elliott, who wrote the opinion for the Court, went a little further and referred to Act 89 of 1914, a special statute relating to appeals that come up to this Court. As stated by him, that Act was passed before a later law providing this Court with a permanent Clerk had been passed by the Legislature, but he held that this later law did not have the effect of changing that provision of Act 89 of 1914, which requires transmission of the record, and the costs of appeal, by the Clerk of the District Court from which the appeal emanates to the Clerk of this Court at Baton Rouge. As a consequence it was held that under the law it is the duty of the Clerk of the District Court from which the appeal is taken, and not that of the appellant, to see that the appeal is transmitted to this Court in time. The opinion states, that "our rule on the subject must yield to the law of the State" [152 So. 164].

Since the decision in the Stockbridge case we find that the Court of Appeal for the Second Circuit has invariably followed the ruling made therein. It adopted that ruling before, and as late as the case of Twin City Motor Co. v. Pettit, La.App., 177 So. 814, reaffirmed this ruling, and referred to the case of Gazzo v. Bisso Ferry Co., Inc, La. App., 174 So. 132, 133.

In the Gazzo case just mentioned it is noted that the case of Vinyard v. Stassi, supra is referred to, and is said to be not in

conflict with the case under consideration because of the special statute, meaning Act 89 of 1914, referred to by Judge Elliott, which "requires that in appeals to the Court of Appeal for the First Circuit the record shall be transmitted by the clerk of the district court." Strange to say, in that case, and in no subsequent case from the Court of Appeal for Orleans Parish which we are able to find, is reference made by that Court to the Stockbridge case.

Following all of this, this Court had under consideration the question relating to filing the transcript of appeal, in the case of Mansaur v. Anding. That case came before us strictly on a motion to dismiss the appeal, and on the original hearing, as reported in 171 So. 187, the appeal was ordered dismissed. We referred in that case to the different rulings of the various Courts. Our ruling, however, rested principally on the fact that, even assuming that the duty of filing the transcript is imposed on the Clerk of the District Court, in that case he was not at fault because the filing fee necessary to bring up the appeal had not been paid by the appellant until more than nine months after the return day. An application for rehearing was made, and a showing was made by the appellant, which cast some doubt as to the date of the payment of the filing fee by the appellant (174 So. 115). We finally decided in the case under consideration that it was best to remand the case for the purpose of fixing the responsibility for the loss of the record, and also to ascertain, if possible, the precise day on which the fee for filing the record had been deposited with the Clerk of the District Court. The record was finally produced in Court, we considered the appeal, and decided the case on its merits (177 So. 369).

In the very recent case of Succession of Bongiovanni, 183 So. 570, we maintained the appeal, and, because of certain circumstances which presented themselves in that case, we cited with approval, the case of Vinyard v. Stassi, supra.

█ Out of all this confusion, the following may be stated to be the present status with regard to the matter: The Supreme Court in the Stockbridge case laid down the rule that in the Courts of Appeal the duty of preparing and filing the transcript after the appellant has perfected the appeal is imposed upon the Clerk of the District Court. The Court of Appeal for the Second Circuit seems never to have deviated from that ruling, which as a matter of fact it had followed before the decision in the Stockbridge case. The Court of Appeal for Orleans Parish on the other hand has always followed the ruling which the Supreme Court adopted and followed with regard to appeal to that Court, by imposing upon the appellant the duty of seeing that the transcript is made up and properly filed in time. This Court prior to the decision in the Vinyard case had adopted the Supreme Court ruling, as was followed also by the Court of Appeal for Orleans Parish, but since then seems to have entertained some doubt on the question. Its more recent decisions, however, especially the two last cited, lean to the ruling which imposes the duty of filing the transcript upon the Clerk of the District Court, rather than upon the appellant, after the latter has done all that is necessary on his part to perfect the appeal. Regardless of whatever confusion may heretofore have existed, we believe that this Court is bound by the decision of the Supreme Court in the Stockbridge case, and by our decision in the Vinyard case, and that the proper thing for us to do now is to follow the Stockbridge and Vinyard cases and maintain the appeal herein, as there seems to be no question in this case that the appellant did all that was required of him to perfect his appeal, and the failure to lodge the transcript in time is attributable to the neglect and fault of the Clerk of the District Court.

█ There is very little that need be said on the merits of the case as the only question involved, as already stated, is whether or not the award for compensation should be for four hundred weeks, instead of three hundred weeks, as decreed by the judgment of the District Court. That question depends upon the interpretation to be given to the testimony of the doctors who testified in the case. These were Dr. Lewis, Dr. McClendon, Dr. Simon and Dr. Ficklen. All of them, with the exception of Dr. Simon, testified that in their opinion the plaintiff was unable, because of his injury, to do carpentry work, or any other kind of hard manual labor, and none of them seemed to be willing to state definitely when, in their opinion, he would be able to go back to work.

The tendency in the jurisprudence in these kind of cases today seems to be to award compensation as for total, permanent disability, leaving the matter of curtailing the period of disability, if anything should develop, to the wisdom of that provision of the Compensation Statute which gives the right

to the defendant at intervals of six months to have the injured employee examined, and to then present the question to the Court for determination as to whether the disability persists or not.

The motion to dismiss the appeal will therefore be overruled, and the appeal will be maintained. On the merits of the case, the judgment of the District Court is amended by increasing the number of weeks covering compensation payments at $16.90 per week from period not exceeding three hundred weeks, to a period not exceeding four hundred weeks, and that as thus amended the judgment be affirmed at the costs of the appellees.